## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| **INVACARE CORPORATION**, *et al.* | § | CASE NO. 23-90068(CML) |
| | § | |
| Debtors. | § | (Jointly Administered) |

### HELENE TANOUS'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d) AND WAIVER OF 30 DAY <u>HEARING REQUIREMENT OF § 362(e)</u>

**This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**

**Represented parties should act through their attorney.**

**There will be a hearing on this matter on March 30, 2023 at 1:00 p.m. in courtroom 401, 4th Floor, 515 Rusk Street, Houston, Texas 77002.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

**Helene Tanous** ("Ms. Tanous" or "Movant") files this Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and Waiver of 30-Day Hearing Requirement of § 362(e) (the "Motion") in the above-captioned bankruptcy case (the "Bankruptcy Case"), and in support, respectfully states as follows:

### I. PRELIMINARY STATEMENT

1.      By this Motion, and pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure and Rule 4001-1 of the Local Rules for the Southern District of Texas, Tanous seeks entry of an order granting relief from the automatic stay to permit Movant to continue litigating a pre-

petition lawsuit currently pending in the District Court of the State of Nevada, County of Clark, Department No. IV; styled Case No. A-21-833622-C, *Helene Tanous, Plaintiff vs. Bellagio, LLC, Invacare Corporation, Invacare HCS, LLC, Doe Individuals I through X, and Roe Legal Entities I through X, Defendants* (the "State Court Lawsuit"). A true and correct copy of the First Amended Complaint filed in the District Court of the State of Nevada by Movant is attached hereto as **Exhibit "A"**. In particular, Movant requests that the Bankruptcy Court modify the automatic stay for the purpose of allowing Movant to proceed in the State Court Lawsuit and to subsequently take any and all steps and actions to enforce his claims against any assets which are available, including any applicable insurance policies. Granting this Motion will not prejudice the Debtors' or any creditor's otherwise applicable rights and claims.

## II.      JURISDICTION

2.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The relief requested herein may be granted in accordance with §§ 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Bankruptcy

3.      On January 31, 2023 (the "Petition Date"), Invacare Corporation ("Debtor") filed its original voluntary petition under chapter 11 of the Bankruptcy Code.

**B.  The State Court Lawsuit**

4.      On or around June 1, 2019, Ms. Tanous was a guest at Bellagio Resort & Casino. During her stay, she informed the staff that she would need a handicapped shower. Instead of providing a handicapped shower, the staff of Bellagio provided Ms. Tanous with a shower chair that they represented was appropriate for use. That shower chair was manufactured and/or sold to Bellagio by Debtor. While Ms. Tanous was using the chair, the chair broke and collapsed, causing her to fall to the floor of the shower, which caused her to suffer injuries. Debtor reportedly was self-insured and presumably carries additional liability insurance, as necessary, to cover the date of loss and personal injury claim.

5.      Ms. Tanous filed the State Court Lawsuit on April 27, 2021.  Debtor was served with the original complaint on September 10, 2021.  On February 3, 2023, Ms. Tanous's counsel received notification from Clark County's E-filing service that Debtor had filed a proceeding under the bankruptcy code and the automatic stay was in effect.  Concurrently with this Motion, Ms. Tanous filed her proof of claim.

6.      Movant's claims in the State Court Lawsuit are for civil negligence and product defect incurred as a result of the wrongful actions by the Debtor.

7.      The Debtor's bankruptcy filing has stayed the State Court Lawsuit.

## IV.      LEGAL ARGUMENTS AND AUTHORITIES

8.      As a threshold matter, the Bankruptcy Court does not have jurisdiction to liquidate the claims asserted in the State Court Lawsuit which are solely personal injury claims. Furthermore, this Bankruptcy Court has authority to lift the automatic stay to permit the Parties to proceed in the State Court Lawsuit for "cause" determined on a case-by-case basis on an examination of the totality of circumstances. Courts have held that circumstances show lifting

the stay is appropriate when no great prejudice to either the bankruptcy estate or the debtor will result from the continuance of the civil action and the hardship to plaintiff caused by the continuance of the stay considerably outweighs the hardship caused to the debtor by modification of the stay.

### A.  This Court May Lift the Bankruptcy Stay

9.      Case law within the Fifth Circuit is clear, bankruptcy courts do not have jurisdiction to hear and determine the amount of personal injury tort claims.  *In re Fuchs*, 2006 WL 6543977, *2 (Bankr. N.D. Tex. 2006) (holding that "[u]nder 28 U.S.C. §§ 157(b)(2)(B), (b)(2)(O), and (b)(5), only the district court can determine personal injury tort and wrongful death claims against a debtor—a bankruptcy judge simply does not have jurisdiction to liquidate such claims.").  Movant's claims in the State Court Lawsuit relate to the injuries and damages sustained by Movant in the accident that occurred at the Bellagio property.  A Texas bankruptcy court, after performing an analysis of whether cause existed to lift the stay to allow litigation of a pre-petition personal injury lawsuit stemming from an automobile accident, noted that notwithstanding the cause issue, personal injury claim liquidation cannot go forward in bankruptcy courts and if a creditor seeking to liquidate such claims is not granted relief from stay, he is left with no remedy in any court.  *In re Fowler*, 259 B.R. 856, 861 (Bankr. E.D. Tex. 2001) (stating that this became a due process issue).

10.      Finally, a bankruptcy court has authority to lift the automatic stay to permit litigation to proceed in a non-bankruptcy forum for cause, as determined on a case-by-case basis. *See In re Tonthat*, No. 07-30315-H3-13, 2009 WL 2461041, at *2 (Bankr. S.D. Tex. Aug. 7, 2009); *In re Wells*, No. 08-80206-G3-13, 2008 WL 4179238, at *1 (Bankr. S.D. Tex. Sept. 5, 2008); *In re Adebo*, No. 07-36371-H3-13, 2007 WL 3235122, at *2 (Bankr. S.D. Tex. Nov. 1,

2007); *In re Young*, No. 06-80397 G3-7, 2006 WL 3088225, at *2 (Bankr. S.D. Tex. Oct. 20, 2006). Specifically, section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [section 362(a)], such as by terminating, annulling, modifying, or conditioning such stay for cause ...." 11 U.S.C. § 362(d)(1). The term "cause" is not defined in the Bankruptcy Code and whether cause exists must be determined on a case-by-case basis on an examination of the totality of circumstances. *See In re Tonthat*, 2009 WL 2461041, at *2; *In re Wells*, 2008 WL 4179238, at *1; *In re Adebo*, 2007 WL 3235122, at *2; *In re Young*, 2006 WL 3088225, at *2. Allowing a matter to proceed in another forum may constitute cause. *In re Young*, 2006 WL 3088225, at *2. The Court has broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case. *Id.*

11.     Notwithstanding the foregoing, This Court should modify the automatic stay, assign Debtor's right to assert claims against its liability carrier to Movant, and allow liquidation of these personal injury claims.  This relief is provided by 11 U.S.C. §362(d)(1) which states that: "On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay…such as by…modifying, or conditioning such stay…for cause, including the lack of adequate protection of an interest in the property of such party in interest." 11 U.S.C. §362(d)(1)(2006). Because the Code does not define "cause" courts must determine whether it exists on a case-by-case basis. *In re Murray Industries Inc.*, 121 B.R. 635,636 (Bankr. M.D. Fla. 1990).

12.     In performing the case-by-case "cause" determination, courts primarily focus on the competing interests of the parties and considerations of judicial economy. *Murray*, 121 B.R. at 636-37. Once a plaintiff-creditor establishes a prima facie case for relief, the burden of proof

shifts to the debtor to convince the court to continue the stay. *In re Bruce*, 2000 Bankr. (Lexis) 746, *9 (Bankr. E.D. Pa. 2000). "[T]he easiest ground for determining that 'cause' exists in favor of an unsecured creditor is when the creditor seeks to recover from non-estate property such as an insurance or indemnity agreement." *In re Bruce*, 2000 Bankr. (Lexis) at *10.

13.     Movant requests relief from the automatic stay in order to pursue all available assets of the Debtor including existing insurance coverage in place on the date the Movant's claims accrued. Debtor has indicated in disclosures that it was self-insured.

---

**V.     16.1(a)(1)(A)(v) INSURANCE**

Invacare is self-insured in an amount sufficient to satisfy any reasonable judgment against it in this case.

DATED this 1st day of December, 2021.

**BOWMAN AND BROOKE LLP**

By:  /s/ Charles M. Seby
        Charles M. Seby
        Nevada Bar No. 15459
        Suite 1600, Phoenix Plaza
        2901 North Central Avenue
        Phoenix, Arizona 85012-2736

        Mario D. Valencia
        Nevada Bar No. 6154
        **Attorney at Law, LLC**
        40 S. Stephanie St., Ste. 201
        Henderson, Nevada 89012

        Attorneys for Defendant Invacare Corporation

---

Therefore, the circumstances in this case strongly support a modification of the stay.

14.     Furthermore, and although the Court is not required to conduct the test to determine if cause exists to lift the automatic stay to allow the State Court Lawsuit to proceed, the applicable factors are: (1) no great prejudice to either the bankruptcy estate or the debtor

must result from the continuance of the civil action, and (2) the hardship to the plaintiff caused by the continuance of the stay considerably outweighs the hardship caused to the debtor by modification of the stay. *Fowler*, 259 B.R. at 860.

### 1. No Great Prejudice Exists to Debtor

15.     Movant avers that the Court is not required to conduct this analysis given the jurisdictional limitations previously discussed, however, if the Court decides to consider the factors, the Debtor will not suffer great prejudice if the stay is lifted and is required to litigate the State Court Lawsuit.

16.     Furthermore, the Debtor will have to answer to Movant's claims whether it be in state court, this Court or another Court.  In any forum, Debtor will be required to have counsel to represent it in discovery, motions practice and hearings to liquidate the value of Movant's claims.  Put simply, Movant is not going to disappear quietly into the night.  Movant's claims will be liquidated against the Debtor.  The cost to Debtor in defending against Movant's claims would most likely be comparable in any legal forum.  Further, in the event Debtor's insurance carrier provides a defense and/or coverage in the State Court Lawsuit, those fees would not create a burden to this bankruptcy estate.

17.     No great prejudice to the Debtor or the bankruptcy estate will exist if the Court lifts the stay to permit the Parties to continue the State Court Lawsuit.  Here, in part evidenced by Debtor's own actions, a stay would not result in any prejudice, let alone a great one, to the Debtor or the bankruptcy estate and this factor, if considered relevant, weighs substantially in favor of granting relief from the automatic stay.  Movant was injured at the hands of Debtor, and Debtor must be forced to face his actions in one forum or another.

18.     Further, no great prejudice exists when a debtor will not be held personally responsible for payment of a civil judgment, or when relief from the stay is limited to determinations of liability where the creditor is prohibited from collecting on the judgment. *See In re McGraw*, 18 B.R. 140, 142 (Bankr. W.D. Wis. 1982). Although many courts have considered the issue, no court has held that the costs of defending against a claim alone create a great prejudice. *McGraw*, 18 B.R. 140 at 142. In *McGraw*, the plaintiffs sought relief from a stay to continue litigation of their personal injury claim against McGraw and his former employer in an effort to determine liability only. *McGraw*, 18 B.R. 140 at 141. Although the plaintiffs did not seek damages from McGraw, his presence as a defendant was necessary to determine liability and allow the plaintiffs to recover from his former employer's insurers. *McGraw*, 18 B.R 140 at 142. Even though the insurance company was unlikely to pay for McGraw's defense, the court granted modification of the stay. *McGraw*, 18 B.R 140 at 142.

19.     In the case at hand, modification of the stay will not result in "great prejudice." Movant requests modification for the limited purpose of determining liability and damages. Additionally, like the plaintiffs in *McGraw* who sought payment from McGraw's former employer and insurer, Plaintiff will seek enforcement of any eventual settlement or judgment from any and all assets available, including Debtor's self-insured policy and liability insurer, if necessary. Debtor should already have set aside these funds in anticipation of litigation and should otherwise have coverage for claims that exceed its self-insured policy.

20.     While Congress intended the automatic stay to have broad application, the legislative history to section 362 clearly indicates Congress' recognition that the stay should be lifted in appropriate circumstances. The Senate Report accompanying the Bankruptcy Reform Act of 1978 stated that: "It will often be more appropriate to permit proceedings to continue in

their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." See S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836 (emphasis added).

21.     Lifting the automatic stay to allow the State Court Lawsuit to proceed, in light of the foregoing, will not result in any great prejudice to the Debtor or the bankruptcy estate. Accordingly, the factor of prejudice to the Debtor and the bankruptcy estate heavily weighs in favor of this Court lifting the automatic stay for the purpose of permitting the Parties to liquidate and try the underlying disputes in the State Court Lawsuit.

### 2.  Balancing the Hardships

22.     The Court must also weigh the hardship imposed on the plaintiff-creditor by the stay verses the hardships a modification would create for the debtor. *Bock*, 37 B.R. at 566. Courts primarily consider the impact the stay will have in delaying and extending a plaintiff's litigation and recovery and the expense to the debtor in defending the action. *Bock*, 37 B.R., at 566. A stay may effectively deny a plaintiff the opportunity to litigate its claim as evidence ages and memories fade. *Bock*, 37 B.R. at 566. Where the stay does not effectively deny a plaintiff the right to litigate, the plaintiff still suffers an extended delay in judicial proceedings that often lasts a significant length of time even in the absence of a stay. *See Bock*, 37 B.R., at 567. In contrast, the costs of defending a suit or the possibility of a state court judgment against the debtor generally does not create a significant hardship, especially when no enforcement is sought against the debtor. *See Bock*, 37 B.R. at 567.

23.     Courts have consistently held that the potential hardship imposed on the plaintiff by the automatic stay outweighs stay outweighs any hardship on the debtor that modification of a

stay allowing liquidation of a claim might create. *See, e.g. Bock*; *In re Harris*, 85 B.R. 858 (Bankr. D. Colo. 1988); *In re Peterson*, 116 B.R. 247 (Bankr. D. Colo. 1990). This is particularly true when a party seeks a judgment to recover from a solvent third party. *Harris*, 85 B.R. at 861. In *Harris*, a plaintiff-creditor sought modification of the automatic stay to proceed with their action against a real estate broker for fraud so they could recover damages from the Colorado Real Estate Recovery Fund. *Harris*, 85 B.R. at 859. The court modified the stay because preventing collection from a solvent third-party, simply because the debtor filed bankruptcy, was unnecessary and created "a severe hardship on the creditor that clearly outweigh[ed] any hardship to the debtor." *Harris*, 85 B. R. at 861. The *Bock* court, considered loss of witnesses and crowded court dockets in considering the hardships to the parties. *Bock at* 566.

24.     As in both *Bock* and *Harris*, Plaintiff are requesting relief from this stay, in order to proceed against a solvent third-party, Invacare and any applicable insurance carrier, if necessary.  Movant will very likely be prejudiced if the stay is not lifted.  As a result of the Debtor's bankruptcy filing, Movant is presently being deprived of pursuing her claims.  In fact, Ms. Tanous was recently in the hospital with serious health issues and it was not clear that she would survive. This stay clearly imposes hardships on Movant that greatly outweigh any hardship a modification would create for Invacare.

25.     Where the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to proceed. *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 732 (7th Cir. 1991). Movant has disclosed her experts in the State Court Lawsuit and the parties had a scheduled private mediation set for April 11th, 2023. Thus, the advanced stage of the non-bankruptcy personal injury case, weighs in favor of Ms. Tanous.

### 3.  Probability of Prevailing on the Merits

26.     A plaintiff need only make a slight showing of probability of success on the underlying personal injury claim. *In re Rexene Prods. Co.*, 141 B.R. 574, 578 (Bankr. D. Del. 1992). This showing is so slight that some courts do not even apply this factor. *See*, *e.g.*, *Peterson*, 16 B.R. 247 (Bankr. D. Colo. 1990).  Movant's claims have merit and are solidly grounded in Nevada case precedent.  Movant's injuries are serious and compensation for their injuries should be made as soon as practicable.

### B.     Judicial Economy

27.     Considerations of judicial economy also favor modification of the stay in this case.  Under 28 U.S.C. §157, bankruptcy courts may not conduct proceedings involving "the liquidation or estimation of contingent or un-liquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under Title 11." 28 U.S.C §157(b)(2)(B)(2006). That section further provides that such claims shall be tried in district court in the district in which the bankruptcy case is pending. 28 U.S.C. §157(b)(5)(2006).  As a result, Debtor must defend this action either in state court or in federal district court to liquidate Plaintiff's interests for purposes of Invacare's bankruptcy.  Additionally, the legislative history of §362 supports relief from the stay to allow a matter to proceed in another forum. *In re Murry Industries Inc.*, 121 B.R. 635, 636 (Bankr. M. D. Fla. 1990). That history states: "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." *Murray*, 121 B. R. at 636, citing Senate Rep. No. 989, 95th Cong. 2d Sess., Reprinted in (1978) U.S. Code Cong. & Ad. News 5787, 5836.

28.     As litigation has become necessary, allowing the action to proceed in state court is simply more efficient.  Litigation of the State Court Lawsuit is more appropriate in state court as opposed to a US District Court, where the Nevada court is knowledgeable and experienced in personal injury matters such as this instant litigation.

### C.     Assignment of Debtor's Rights to Pursue Claims against Carrier

29.     An order granting to Ms. Tanous, the assignment of rights from Debtor to pursue claims against their liability carrier is part and parcel with an order granting relief from the automatic stay.  The relief from the automatic stay will have no benefit if Movant is not granted the right to pursue recovery against all available insurance policies, including Debtor's liability carrier, if necessary above Debtor's self-insured policy, which is currently an unknown limit/amount. In the event Debtor has failed to sufficiently maintain its self-insured amount, then its insurance carrier is necessary.

### IV.     CONCLUSION AND PRAYER

30.     Notwithstanding the fact that this Court lacks jurisdiction to liquidate the personal injury claims brought in the State Court Lawsuit, cause also exists for this Court to grant relief from the automatic stay to allow Ms. Tanous to proceed with the litigation in the State Court.

WHEREFORE, **Helene Tanous** requests that this Court enter an order lifting the automatic stay under 11 U.S.C. § 362 allowing the State Court Lawsuit pending in the District Court of the State of Nevada to go forward, that Movant be allowed to proceed at the appropriate time to collect any judgment against any available assets, including but not limited to self-insurance proceeds and other insurance policies, and that Movant be permitted to file a proof of claim with the Court.  Movant further prays for such further relief to which she may be entitled at law or equity.

**Dated: February 24, 2023**

Respectfully submitted,

**LANGLEY & BANACK, INC.**
745 E Mulberry Ave Suite 700
San Antonio, TX 78212
(210) 736-6600
(210) 735-6889 (fax)

*/s/ Allen M. DeBard*
Allen M. DeBard
adebard@langleybanack.com
State Bar No. 24065132
**ATTORNEYS FOR HELENE TANOUS**

## CERTIFICATE OF SERVICE

I certify that on February 24, 2023, a true and correct copy of the foregoing document was served by electronic mail through the Court's ECF system to all parties who have registered an appearance in this a case and/or by US Mail, postage prepaid.

*/s/ Allen M. DeBard*
Allen M. DeBard

# EXHIBIT "A"

**FAC**
Jared R. Richards, Esq.
Nevada Bar No. 11254
Dustin E. Birch, Esq.
Nevada Bar No. 10517
Shea I. Billadeau, Esq.
Nevada Bar No. 14481
CLEAR COUNSEL LAW GROUP
1671 W. Horizon Ridge Pkwy, Suite 200
Henderson, Nevada 89128
(702) 476-5900, Telephone
(702) 723-9828, Facsimile
jared@clearcounsel.com
dustin@clearcounsel.com
shea@clearcounsel.com
*Attorneys for Plaintiff Helene Tanous*

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| HELENE TANOUS, an individual, | CASE NO.  A-21-833622-C |
| Plaintiff, | DEPT. NO. IV |
| vs. | |
| BELLAGIO, LLC, a domestic limited liability company; dba BELLAGIO RESORT & CASINO; INVACARE CORPORATION, INVACARE HCS, LLC; DOE INDIVIDUALS I through X; and ROE LEGAL ENTITIES I through X, | |
| Defendants. | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, Helene Tanous ("Tanous"), through her attorneys of record, Clear Counsel Law Group, complains and alleges against Defendants:

**THE PARTIES**

1.      At all times relevant hereto, Plaintiff Tanous is and was a resident of Texas.

2.      Upon information and belief, at all times relevant hereto, Defendant Bellagio, LLC (hereinafter "BELLAGIO") was and is a domestic limited liability company, licensed to do business in Clark County, Nevada as Bellagio Resort & Casino.

3.      Upon information and belief, Defendant INVACARE HCS, LLC was the

manufacturer, retailer, or distributor of the Chair that is the subject of this suit. Defendant INVACARE HCS, LLC was a domestic corporation, licensed to do business in Clark County, Nevada, and its principal place of business and headquarters is located in Ohio.

4.      Upon information and belief, at all times relevant hereto, Defendant INVACARE CORPORATION was the manufacturer, retailer, or distributor of the Chair that is the subject of this suit. Defendant INVACARE CORPORATION was and is a foreign corporation, domiciled in Ohio, licensed to do business in Nevada, and acted as the parent company of Defendant INVACARE HCS, LLC.

5.      The true names and capacities of Defendants designated as DOE Individuals I through X and ROE Legal Entities I through X are responsible for the "Incident" described below and were the proximate cause of injuries and damages suffered by Plaintiff.  When the true names and capacities of the DOES I through X and ROE Legal Entities I through X are ascertained, Plaintiff will ask leave of this Court to amend this Complaint to insert their true names and capacities.

6.      DOE Individuals I through X and ROE Legal Entities I through X have knowledge or reasonably should know that they are rightful Defendants.

7.      DOE Individuals I through X and ROE Legal Entities I through X–whose identities are unknown or have been misidentified above–are connected to this action because they designed, engineered, manufactured, distributed, maintained, assembled, repaired, or sold the Chair, components used in the Chair, or both, identified in the "Incident" described below.

8.      If a Defendant was misidentified, Plaintiff reserves her right to amend this Complaint and substitute the proper Defendant entity.

## JURISDICTION AND VENUE

9.      The Eighth Judicial District Court possesses subject matter jurisdiction over this matter under Article 6, Section 6, of the Constitution of the State of Nevada, and NRS 4.370.

10.     The Eighth Judicial District Court has personal jurisdiction over the Defendants

- 2 -

under NRS 14.065 because Defendants purposely availed themselves to the jurisdiction of the courts in the State of Nevada by directing products into the State of Nevada, conducting business in the State of Nevada, or both.

11.     Venue is proper in the Eighth Judicial District Court under NRS 13.040 because Defendant Bellagio's primary place of business is Clark County, the "Incident" described below occurred in Clark County, Nevada, Defendants do business in Clark County, Nevada, and the "Chair," described below and which is the subject of this action, was sold in Clark County, Nevada.

## GENERAL ALLEGATIONS

12.     Defendants INVACARE CORPORARTION and INVACARE HCS, LLC design, engineer, manufacture, and sell chair products for hospitality, and hotel venues.

13.     The Bellagio is owned and operated in Las Vegas, Nevada.

14.     Before June 1, 2019, Defendants INVACARE CORPORATION and INVACARE HCS, LLC ("INVACARE Defendants"), DOE Individuals I through X, ROE Legal Entities I through X, or a combination of these Defendants designed, engineered, manufactured, assembled, distributed, marketed, and sold a defective Chair used at the Bellagio on or about June 1, 2019 (the "Chair").

15.     The Chair is unsafe because, by its design and manufacture, it is prone to malfunction, causing occupants to fall to the ground.

16.     The Chair was defective in its failure to warn of the danger of malfunction, causing occupants to fall to the ground.

17.     The Chair was unsafe for its foreseeable use.

18.     Defendants were on notice that the Chair was unsafe to be used by patrons of Defendant Bellagio, or other hotels and casinos.

19.     Upon information and belief, before the Chair left INVACARE Defendants' control, Defendants knew the Chair was unreasonably dangerous and prone to ejecting its occupant.

20.     Upon information and belief, before the Chair left INVACARE Defendants' control,

- 3 -

CLEAR COUNSEL LAW GROUP

50 S. STEPHANIE ST., SUITE 101
HENDERSON, NEVADA 89012
(702) 476-5900

Defendants were on notice about the danger of the Chair ejecting its occupant.

21.     Defendant Bellagio maintained the Chair which it provided for public use.

22.     Defendants knew of the dangerous and hazardous condition of the Chair and failed to take measures to correct the dangerous and hazardous condition in disregard for the rights and safety of individuals who used the Chair.

23.     The danger and hazard surrounding the use of the Chair was discovered or discoverable by Defendants before the "Incident" described below.

24.     Defendants negligently failed to maintain the Chair in a safe condition and repair contributing to the Chair's hazardous condition.

## The Incident

25.     On or around June 1, 2019, Tanous was a patron at the Bellagio.

26.     Tanous informed the staff at the Bellagio that she needed a handicapped shower.

27.     Instead of providing a handicapped shower, the Bellagio staff provided Tanous with a shower chair (the "Chair") that the Bellagio staff represented was appropriate for Tanous' use.

28.     The chair was selected by and provided by the Bellagio staff.

29.     On or around June 1, 2019, Tanous sat in the Chair.

30.     While Tanous was sitting in the Chair, the Chair broke and collapsed, causing Tanous to fall to the floor of the shower which caused her to suffer injuries.

31.     Plaintiff has retained the services of Clear Counsel Law Group to prosecute this action and are entitled to reasonable attorneys' fees and costs.

## FIRST CLAIM FOR RELIEF

### NEGLIGENCE

#### (Against Defendant Bellagio)

32.     Plaintiff incorporate by reference all preceding paragraphs of this Complaint herein.

33.     On the date of the Incident, Defendant Bellagio owned, controlled, and maintained

- 4 -

CLEAR COUNSEL LAW GROUP

50 S. STEPHANIE ST., SUITE 101
HENDERSON, NEVADA 89012
(702) 476-5900

the Bellagio.

34. On the date of the Incident, Defendant Bellagio owned, controlled, and maintained the Chair.

35. Defendant Bellagio had a duty to Plaintiff to keep the Chair free of hazardous conditions and reasonably safe for use.

36. Defendant Bellagio breached this duty by allowing a dangerous condition to exist in the Chair and on its premises.

37. The Chair contained a hazardous condition and therefore fell below national safety standards and the community safety standards of Clark County, Nevada.

38. Upon information and belief, the hazardous condition of the Chair existed before the Incident and should have been discovered by Defendant Bellagio.

39. As a direct and proximate result of the dangerous condition, the Incident occurred.

40. As a direct and proximate result of the Incident, Plaintiff injuries to her body and required medical care and subsequent treatment.

41. Because of the Incident and as a direct and proximate result of Bellagio's actions and omissions, Plaintiff each have been damaged in an amount in excess of $15,000.00.

## SECOND CLAIM FOR RELIEF

## STRICT PRODUCTS LIABILITY

## (Against Defendant Bellagio, INVACARE Defendants, DOES I through X, and ROE Legal Entities I through X)

42. Plaintiff incorporates by reference all preceding paragraphs of this Complaint herein.

43. Defendants, DOES I through X, ROE Legal Entities I through X, or a combination of these Defendants, designed, engineered, manufactured, assembled, distributed, marketed, sold, and provided the Chair.

44. Defendants, DOES I through X, ROE Legal Entities I through X, or a combination

- 5 -

of these Defendants, designed, engineered, manufactured, assembled, distributed, marketed, sold, and provided the Chair knowing it would be used without inspection for defects.

45.     Defendants, DOES I through X, ROE Legal Entities I through X, or a combination of these defendants placed the Chair into the stream of commerce.

46.     Defendants, DOES I through X, ROE Legal Entities I through X, or a combination of these Defendants adopted and ratified the design, engineering, and manufacture of the Chair.

47.     Defendants, DOES I through X, ROE Legal Entities I through X, or a combination of these Defendants intended the Chair to be used by patrons of Bellagio, or other hotels and casinos.

48.     Upon information and belief, on June 1, 2019, the Chair was in substantially the same condition as when it left the possession of INVACARE Defendants.

49.     The Chair–when it left the possession of INVACARE Defendants, DOES I through X, ROE Legal Entities I through X, or a combination of these defendants–was defectively designed, engineered, manufactured, and assembled.

50.     The Chair was defective because it failed to include safety features that would have prevented the Incident.

51.     The Chair–when it left the possession of INVACARE Defendants, DOES I through X, ROE Legal Entities I through X, or a combination of these defendants–was inherently dangerous for its intended use, and an unreasonably dangerous product that presented and constituted an unreasonable risk of danger and injury.

52.     Although being used in the ordinary manner intended by Bellagio and INVACARE Defendants, DOES I through X, ROE Legal Entities I through X, or a combination of these defendants, the Chair did not perform as safely as an ordinary person using it would expect because it was defectively designed, engineered, manufactured, and assembled.

53.     INVACARE Defendants, DOES I through X, ROE Legal Entities I through X, or a combination of these Defendants knew or should have known about the defect in the Chair and failed to warn of the hazard and instruct how to avoid the hazard.

- 6 -

CLEAR COUNSEL LAW GROUP
50 S. STEPHANIE ST., SUITE 101
HENDERSON, NEVADA 89012
(702) 476-5900

54.     Because of defects in the Chair, it was unreasonably dangerous.

55.     The defects in the Chair existed when it left possession of INVACARE Defendants.

56.     At the time of the "Incident" described above, Tanous was sitting on the Chair in the manner intended and anticipated by Defendant Bellagio and INVACARE Defendants, DOE Individuals I through X, and ROE Legal Entities I through X.

57.     At the time of the "Incident" described above, Tanous was unaware of any defect in the Chair or the dangerous condition of the Chair.

58.     Defects in the Chair were the proximate cause of injuries and damages suffered by Tanous.

59.     Safer alternative designs, including safety features, exist that would have prevented the Incident or lessened Tanous's injuries.

60.     Upon information and belief–before it released possession of the Chair– Defendants Bellagio and INVACARE Defendants, DOE Individuals I through X, and ROE Legal Entities I through X, including their respective directors, managers, officers, and principals knew that the Chair was unreasonably dangerous, but decided to not remedy the hazard.

61.     As a direct and proximate result of the defects described above regarding the Chair, Tanous was ejected from the Chair and suffered injuries and damages.

62.     Because of the Incident and defects described above, Plaintiff has suffered damages in an amount in excess of $15,000.00.

### THIRD CLAIM FOR RELIEF

### NEGLIGENCE

### (Against INVACARE Defendants, DOE Individuals I-X, and ROE Legal Entities I-X)

63.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint herein.

64.     INVACARE Defendants had a duty to design, engineer, manufacture, assemble, distribute, market, and sell safe Chairs free of defect and hidden safety hazards.

CLEAR COUNSEL LAW GROUP

50 S. STEPHANIE ST., SUITE 101
HENDERSON, NEVADA 89012
(702) 476-5900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

65.     INVACARE Defendants, DOE Individuals I through X and Roe Legal Entities I through X had a duty to design, engineer, manufacture, assemble, distribute, market, and sell safe Chairs free of defect and hidden safety hazards.

66.     INVACARE Defendants, DOE Individuals I through X, and ROE Legal Entities I through X breached their duty to Plaintiff in designing, engineering, manufacturing, assembling, distributing, marketing, and selling the Chair because it had a defect which caused it to eject Tanous when she sat on it.

67.     As a direct and proximate result of the defects described above regarding the Chair, Tanous was ejected from the Chair and suffered injuries and damages.

68.     Because of the Incident and as a direct and proximate result of Defendants' actions and omissions, Plaintiff have suffered damages in an amount in excess of $15,000.00.

///
///
///
///

- 8 -

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff expressly reserves the right to amend this Complaint before or at the time of trial, to insert those items of damage and names of those persons not yet ascertainable, prays judgment against all Defendants, and each of them, as follows:

1.      For general damages sustained by Plaintiff in an amount in excess of $15,000.00.

2.      For special damages sustained by Tanous for medical expenses, future medical expenses, lost wages, loss of earning capacity, and additional elements of damage not presently ascertainable, but in an amount in excess of $15,000.00.

3.      For reasonable attorneys' fees and costs.

4.      For interest at the statutory rate.

5.      For such other relief as the Court deems just and proper.

DATED this 1st day of September, 2021.

CLEAR COUNSEL LAW GROUP

By:      /s/ Shea I. Billadeau
         Jared R. Richards, Esq.
         Nevada Bar No. 11254
         Dustin E. Birch, Esq.
         Nevada Bar No. 10517
         Shea I. Billadeau, Esq.
         Nevada Bar No. 14481
         1671 W. Horizon Ridge Pkwy., Ste. 200
         Henderson, Nevada 89012
         *Attorneys for Plaintiff*
         *Helene Tanous*

CLEAR COUNSEL LAW GROUP

50 S. STEPHANIE ST., SUITE 101
HENDERSON, NEVADA 89012
(702) 476-5900

- 9 -