IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INVACARE CORPORATION, et al.,[1] | ) Case No. 23-90068 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. 381** |

**DEBTORS' OBJECTION TO MARTY JOE RAINES AND SHANE RAINES'S MOTION
FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)
AND WAIVER OF 30 DAY HEARING REQUIREMENT OF § 362(e)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this objection (this "Objection") to *Marty Joe Raines's and Shane Raines's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and Waiver of 30 Day Hearing Requirement of § 362(e)* [Docket No. 381] (the "Motion"). In support of this Objection, the Debtors state as follows:

## PRELIMINARY STATEMENT

1. Marty Joe Raines and Shane Raines ("Movants") seek to lift the automatic stay to pursue claims asserted against Invacare Corporation ("Invacare") related to alleged personal injuries to Marty Joe Raines, as well as the death of Movants' daughter Caylin Raines. The Movants allege that Mr. Raines and Caylin Raines' injuries arise out of a collision between Mr. Raines' vehicle and a third party vehicle, and that Caylin Raines was seated in a wheelchair that was manufactured, designed, distributed, delivered and/or sold to the Raines family by Invacare.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Invacare Corporation (0965); Freedom Designs, Inc. (4857); and Adaptive Switch Laboratories, Inc. (6470). The corporate headquarters and the mailing address for the Debtors is 1 Invacare Way, Elyria, Ohio 44035.

Motion at ¶¶ 7-8. Movants seek to liquidate their claims against Invacare and pursue all available assets of Invacare, including any existing insurance coverage in place on the date that Movants' alleged claims accrued. Motion at ¶ 19.  However, Invacare is self-insured for such matters, as Movants acknowledged in the Motion. Motion at ¶ 12.[2]  Invacare's self-insured status means that Invacare must directly fund costs of defense and any settlements; there is no third-party insurance coverage to pay the claims asserted by Movants.  Accordingly, the stay should remain in place.

2.     Movants' claims are pre-petition claims that can and will be addressed through the claims administration process in the Debtors' chapter 11 cases.  Lifting the stay would require Invacare to pay real dollars out of its own pocket defending against a general unsecured claim that is more appropriately resolved in the bankruptcy cases.  Movants fail to meet the heavy burden required for the Court to modify the automatic stay for cause.

## STATEMENT PURSUANT TO LOCAL RULE 4001-1

3.     The Debtors certify that they and Movants attempted to resolve this dispute over email after Movants filed the Motion, but the parties were unable to come to a resolution.

4.     Invacare disputes the following assertions and issues raised in the Motion: (a) that "the Debtor[s] will not suffer great prejudice if the stay is lifted" (Motion at ¶ 20); (b) that "[t]he cost to Debtor[s] in defending against Movants' claims would most likely be greater in a new forum . . ." (*Id.*); (c) that the defense fees incurred in the pending state court lawsuit (the "State Court Lawsuit") "will not result in any great prejudice to the Debtor[s] or the bankruptcy estate" (*Id.* at ¶ 23); (d) that the Debtors "acts and omissions . . . contributed to and caused" the Movants' injuries (*Id.* at ¶ 10); (e) that "no great prejudice exists when a debtor will not be held

---

[2]     The Debtors do not carry any additional regular liability insurance to cover the Movants' claims; the Debtors only have an excess liability policy that only provides coverage once a certain amount of claims are proven and paid. *See* Motion at ¶ 12.

personally responsible for payment of a civil judgment, or when relief from the stay is limited to determinations of liability where the creditor is prohibited from collecting on the judgment" (*Id.* at ¶ 21); (f) that "[t]he Debtor should have insurance coverage for the Movants' claims and should already have set aside these funds in anticipation of litigation" (*Id.* at ¶ 22); (g) the "stay clearly imposes hardships on Movants that greatly outweigh any hardship a modification would create for the Debtor[s]" (*Id.* at ¶ 26); (h) that the "advanced stage of the State Court Lawsuit[] weighs in favor of Movants" (*Id.* at ¶ 27); and (i) that the Movants are entitled to an assignment of Debtors' rights to pursue recovery against any insurance policies (*Id.* at ¶ 30).  The Debtors reserve the right to supplement additional disputed issues prior to or at the hearing on the Motion.

## BACKGROUND

### A.    The Debtors' Products and End Users

5.    The Debtors are a recognized market leader in designing, manufacturing, and distributing medical equipment used in non-acute care settings to help individuals move, rest, and perform essential hygiene functions.  Such equipment includes clinically-complex medical devices and solutions for congenital (*e.g.*, cerebral palsy, muscular dystrophy, spina bifida), acquired (*e.g.*, stroke, spinal cord injury, traumatic brain injury, post-acute recovery, pressure ulcers) and degenerative (*e.g.*, ALS, multiple sclerosis, elderly, bariatric) ailments.[3]  The Debtors design mobility, seating, and positioning products that have assisted in the care of millions of individuals suffering from a wide range of challenges, from active individuals who may just need additional mobility support to carry out daily life activities, to patients who require more particularized care in residential care settings at home or in rehabilitation centers.

---

[3]    Additional background can be found in the *Declaration of Kathleen P. Leneghan, Senior Vice President and Chief Financial Officer of Invacare Corporation, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 24] (the "First Day Declaration"), which is incorporated herein by reference.

B.      **Invacare's Self-Insurance**

6.      Invacare is self-insured.  As with any manufacturer or distributor of products available to the general public, the Debtors receive claims from time to time associated with alleged defects in their products leading to a variety of end-user injuries or other damages (collectively, the "Product Claims").  When Invacare receives a Product Claim, Invacare is responsible for paying the costs of defense and any amounts awarded to the claimant out of its own pocket.  There is no third party or regular liability insurer that covers or indemnifies Invacare for Product Claims.

7.      Previously, the Debtors self-insured through a subsidiary called Invatection Insurance Company ("Invatection"), a captive insurance company wholly owned by Invacare and based in Burlington, Vermont. Captives are by definition self-funded by their parent entities, and are designed to offer lower costs, significant tax advantages, underwriting profits, and greater control over coverage and claims decisions.  Often, they provide risk-specific coverage otherwise not available in the commercial insurance market.  Invatection previously charged insurance premiums to Invacare in exchange for protection against, among other things, the Product Claims. These strategic advantages ceased to make sense, however, as the Debtors' business went through a number of changes that culminated with the filing of these chapter 11 cases, and Invatection began the process of dissolution prior to the Petition Date.  Invacare remains self-insured, but the Product Claims are no longer processed through Invatection.

C.      **Movants' Claim and the State Court Lawsuit**

8.      On March 15, 2023, Movants filed proof of claim no. 10282 in the Debtors' chapter 11 cases, alleging a claim in the amount of $75,000.00 against Invacare.  *See* Exhibit A.  Prior to the filing of these chapter 11 cases, an agreed scheduling order was entered in the State Court

Lawsuit setting the trial date for August 14, 2023.  Motion at ¶ 26.  As of the Petition Date, depositions have been taken of the Movants, eyewitnesses in the Movants' vehicle, and three "separate designated Corporate Representatives of the Debtor." Motion at ¶ 27.

## OBJECTION

### I.     Movants Have Not Established Cause for Relief From the Automatic Stay.

#### A.     The Automatic Stay Is a Fundamental Debtor Protection and Exceptions Are Narrowly Construed.

9.     "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws."  *In re Timbers of Inwood Forest Assocs., Ltd*., 793 F.2d 1380, 1409 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987).  "The purpose of the automatic stay is to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp*., 682 F.2d 446, 448 (3d Cir. 1982).  In short, the purpose of the automatic stay is "to give the debtor a 'breathing spell' from [its] creditors, and also, to protect creditors by preventing a race for the debtor's assets."  *In re Commonwealth Oil Ref Co., Inc*., 805 F.2d 1175, 1182 (5th Cir. 1986).

10.     "The stay insures that the debtor's affairs will be centralized, initially in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another."  *In re Fowler*, 259 B.R. 856, 858 (Bankr. B.D. Tex. 2001). In light of the purpose of the automatic stay, its scope is interpreted very broadly, and exceptions are interpreted narrowly.  *In re Gasprom, Inc*., 500 B.R. 598, 606 (B.A.P. 9th Cir. 2013).

11.     There is an "insurance exception" to the automatic stay in the Fifth Circuit that applies when insurance coverage exists to pay claims and litigation defense costs such that the debtor does not come out of pocket.  *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993).  However, there such is no regular liability insurance in this case, so *Edgeworth* and the "insurance exception" do not apply.

**B.      A Party Seeking Relief From the Automatic Stay Must Demonstrate "Cause."**

12.     Section 362(d)(1) of the Bankruptcy Code provides that a court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1).  The Bankruptcy Code, however, does not define "cause."  *See, e.g., In re Reitnauer*, 152 F.3d 341, 343 n. 4 (5th Cir. 1998) ("Because [section] 362 does not offer guidance as to what constitutes "cause," reviewing courts must determine whether cause exist[s] on a case-by-case basis.").

13.     Courts in this jurisdiction may apply one of two tests when determining whether cause exists to lift the stay.  The first test (the "Three Factor Test") considers "whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate, whether any hardship to a nondebtor of continuation of the stay outweighs any hardship to [the] debtor, and whether the creditor has a probability of prevailing on the merits of the case."  *In re Kao*, No. 15-31193, 2015 WL 9412744, at *2 (Bankr. S.D. Tex. Dec. 21, 2015).

14.     The second test considers the twelve "*Sonnax* factors" that may be relevant when determining whether cause exists to lift the automatic stay to allow litigation to proceed in another forum, including:

(1)     whether relief would result in a partial or complete resolution of the issues;

(2)     lack of any connection with or interference with the bankruptcy case;

(3)     whether the other proceeding involves the debtor as a fiduciary;

6

(4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5)    whether the debtor's insurer has assumed full responsibility for defending it;

(6)    whether the action primarily involves third parties;

(7)    whether litigation in another forum would prejudice the interests of other creditors;

(8)    whether the judgment claim arising from the other action is subject to equitable subordination;

(9)    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)   the interests of judicial economy and the expeditious and economical resolution of litigation;

(11)   whether the parties are ready for trial in the other proceeding; and

(12)   impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).  Not all factors may be relevant in a given case, and only the relevant factors need to be considered.  *See Sonnax Indus.*, 907 F.2d at 1286.

15.    Whether the Court evaluates the present Motion under the Three Factor Test or the *Sonnax* factors, certain common themes prevail. Both tests: (a) ask whether lifting the stay will interfere with the bankruptcy case; (b) ask whether the estate, and as a result, the debtors' creditors will be prejudiced; and (c) balance the harms of the debtors and the movant.  Here, not only have Movants failed to make even an initial showing of cause, but the circumstances of these chapter 11 cases require the stay be maintained. In particular, the Motion should be denied because: (a) Movants have failed to satisfy the initial burden of proof to show cause; (b) the Debtors' creditors will be prejudiced, because self-insurance means that the Debtors must pay out of pocket to fund the defense in Movants' state court litigation and there would be no insurance proceeds or coverage available for a hypothetical recovery; (c) the undisputed evidence demonstrates that litigation in the State Court Lawsuit would improperly interfere with the Debtors' chapter 11 cases

and restructuring efforts; and (d) the other relevant Three Factor and *Sonnax* factors require maintaining the stay.

      **C.**      **Movants Fail to Satisfy The Three Factor Test.**

            **(i)**      **Lifting the Stay Will Prejudice Invacare and the Bankruptcy Estates.**

      16.      The primary factor in determining whether to lift the automatic stay is whether allowing such action would impact the administration of the debtor's estate. *See In re United States Brass Corp.*, 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect on such litigation on the administration of the estate.") (quoting *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)). Even a "slight interference" with the administration of the debtor's estate "may be enough to preclude relief in the absence of a commensurate benefit." *See Curtis*, 40 B.R. at 806; *see BDA Design Grp., Inc.*, 2013 WI, 12100467, at *5 (same).

      17.      *First*, Movants claim that they will "seek enforcement of any eventual settlement or judgment from any and all assets available, including Debtor[s'] self-insured policy and liability insurer, then from estate assets, if necessary." Motion at ¶ 22. As a preliminary matter, there is no "self-insured policy;" instead, Invacare simply self-insures for Product Claims. Movants fail to account for Invacare's self-insured status and its concurrent duty to bear the costs of defense of this action. Invacare has already incurred over $260,000 in legal fees and expenses[4] and over $136,000 in expert fees and expenses defending against the State Court Lawsuit. If the stay is lifted, that figure will only grow significantly and serve no purpose other than to deprive the Debtors' creditors of assets that would otherwise be available for distribution under a plan of reorganization. In similar circumstances, courts have held that litigation in another forum should

---

[4]    This figure does not include additional fees and expenses from invoices that the Debtors have received, but which have not been paid as of the date hereof.

not be allowed to continue.  *See, e.g., Columbia Gas Transmission*, 219 B.R. at 721 (relief from discharge injunction should not be granted where debtor is responsible for costs of defending lawsuit); *DePippo v. KMart Corp*., 335 B.R. 290, 298 (S.D.N.Y. 2005) (court declined to allow claim to proceed against debtor due to debtor's $2 million self-insured retention).  Lifting the stay would do nothing more than consume the Debtors' assets by forcing Invacare to defend against pre-petition litigation.

18.	*Second*, lifting the automatic stay would force the Debtors to divert time, resources, and attention that would otherwise be focused on driving the bankruptcy cases toward swift resolution, without a commensurate benefit.  *See In re Bally Total Fitness of Greater N.Y., Inc*., 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying relief from stay upon finding that "allowing the actions to proceed would distract the Debtors' management from the bankruptcy proceeding . . . thereby affecting the interests of other creditors").  Notably, Invacare's scheduled hearing on the confirmation of its plan of reorganization is set for just over a week from the date of the filing of this Objection, and the set hearing on this Motion is set for a day before the confirmation hearing.

19.	*Third*, the Debtors would be forced to adjudicate Movants' claim against Invacare's estate outside of the claims resolution process, which is contrary to one of the basic principles underlying the automatic stay.  *See In re Residential Capital, LLC*, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013) ("Requiring the Debtors to continue litigation in [another forum] would upend the 'strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court.'" (citations omitted)).  Accordingly, this factor weighs against lifting the automatic stay.

  **(ii)**  **Movants Cannot Carry Their Burden to Show the Balance of Harms Tips Significantly in Their Favor.**

20.  Movants have failed to articulate any meaningful cognizable harm that would result were the Motion to be denied.  Absent a showing of cognizable harm, Movants cannot overcome the "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief." *In re W.R. Grace & Co.*, No. 01-01139 (JFK), 2007 WL 1129170, at *3 (Bankr. D. Del. April 13, 2007) (internal quotation omitted).

21.  Movants cannot provide any evidence demonstrating that denial of stay relief will harm them at all.  To the extent Movants have supportable claims against Invacare, these claims, like those of any other creditor, must be pursued through a proof of claim that will be addressed through the normal claim reconciliation process and the Debtors' plan of reorganization.  *See In re Residential Capital*, No. 12-12020 (MG), 2012 WL 3249641, at *4 (Bankr. S.D.N.Y. Aug. 7, 2012) (noting that the creditor would merely have a general unsecured claim against the estate to be paid in accordance with a plan if the state court rendered a judgment against the debtor, which weighed against lifting the stay).  This factor, therefore, also weighs against lifting the stay.

  **(iii)**  **Movants Have Not Demonstrated a "Probability" of Prevailing on the Merits of Their Case.**

22.  Movants have not demonstrated that they are likely to succeed in in claims against Invacare.  Movants would have to successfully carry the burden of proving their claims and overcoming Invacare's defenses, but they have provided no basis for doing so in the Motion. In fact, the Motion fails to address the Movants' probability of success on the merits at all. Accordingly, each of the factors in the Three Factor Test weigh against lifting the automatic stay, and the Motion should be denied.

###### D.      Movants Fail to Satisfy the *Sonnax* Factors.

23.      Movants also fail to satisfy the *Sonnax* factors, as the majority of the relevant factors weigh in favor of denying the Motion.  *First*, lifting the stay will not result in the complete resolution of the issues, because Movants will have to seek to have their claim allowed in the chapter 11 cases and determine the treatment of their claim through the chapter 11 process.  Courts have routinely denied lift stay motions in analogous circumstances.  *See, e.g., Residential Capital, LLC*, 2012 WI, 3249641 at *4 (finding that the first *Sonnax* factor weighed against lifting the stay because the movants would be required to go through the bankruptcy court claims process to collect on any judgment).  "Claims for damages against [debtors] arc the usual grist for the bankruptcy claims allowance process and absent unusual circumstances the bankruptcy court remains the appropriate forum to resolve such claims." *Id*. at *4.  Thus, the first *Sonnax* factor weighs against granting stay relief.

24.      *Second*, if the stay is lifted, Invacare would be forced to spend significant amounts of its own money defending against Movants' claims, reducing the amount of available assets for distribution to creditors in these chapter 11 proceedings.  *See* 28 U.S.C. § 157(b)(2)(A) (providing that core proceedings include "matters concerning the administration of the estate").  Movants have also filed a proof of claim over which the Court has jurisdiction.  *See* 28 U.S.C. § 157 ("Core proceedings include, but are not limited to . . . allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11"); *see also Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987) ("[A] claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.").  The automatic stay is intended to provide the Debtors with the necessary time to focus on negotiating and implementing a successful plan of reorganization.  *See In re Commonwealth Oil Ref Co., Inc*., 805 F.2d at 1182 (explaining that a principal purpose of

11

the automatic stay is to provide a debtor with a "breathing spell" from interference of its reorganization process brought on by its creditors).

25.     Requiring the Debtors to engage in prepetition litigation at this critical juncture immediately before seeking toward confirmation of their plan of reorganization will distract the Debtors' full attention from proceeding toward emergence from bankruptcy and, as a result, delay proceedings and potential recoveries for other general unsecured creditors. The Debtors are moving forward with a single-minded focus to effectuate their reorganization and working expeditiously to ensure a brief stay in chapter 11.  Now is not the time to grant relief from the automatic stay to individual creditors to permit them to liquidate their prepetition claims on an ad hoc basis in other tribunals.  Authorizing the requested relief will significantly affect the Debtors, their estates, and other general unsecured creditors.  Accordingly, the second *Sonnax* factor weighs in favor of denying the Motion.

26.     *Third*, lifting the automatic stay would prejudice the interests of other creditors. The Debtors have a duty to maximize the value of their estates for the benefit of all creditors. Allowing Movants to lift the automatic stay would force the Debtors to expend estate resources defending against Movants' claims.

27.     *Finally*, the balance of harms weighs heavily in favor of denying the relief requested.  The Debtors are moving through chapter 11 on an expedited basis.  Any delay in litigating Movants' claims is expected to be minimal as compared to the status of the litigation. Accordingly, the Debtors' efforts should remain focused on the reorganization, without the distraction of piecemeal litigation.

28.     In contrast, Movants fail to show how they would sustain meaningful harm if the stay were not lifted, much less that their alleged harms outweigh those sustained by the Debtors

should their litigation claims be permitted to proceed at this time. The impact of the stay on Movants is limited to requiring them to resolve their claims through the same claim reconciliation process that applies to every other creditor in this case. Conversely, lifting the stay would adversely impact the Debtors by requiring them to expend time and resources litigating Movants' claims at a critical time in the case when the debtor should be focused on securing plan confirmation. The twelfth *Sonnax* factor, therefore, weighs against granting the requested relief.

29.     Whether viewed under the Three Factor Test or the *Sonnax* test, it is clear that Movants cannot satisfy the standard for lifting the stay. Accordingly, the Motion should be denied. *See In re Sonnay*, 907 F.2d at 1285 ("If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").

For the foregoing reasons, the Debtors request that the Court deny the Motion and grant such other and further relief to which the Debtors are entitled.

Houston, Texas
Dated:  April 20, 2023

/s/  *Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email:  mcavenaugh@jw.com
          jwertz@jw.com
          mstull@jw.com
          vargeroplos@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Yusuf Salloum (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: ryan.bennett@kirkland.com
          yusuf.salloum@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**MCDONALD HOPKINS LLC**
Shawn M. Riley (admitted *pro hac vice*)
David A. Agay (admitted *pro hac vice*)
Nicholas M. Miller (admitted *pro hac vice*)
Maria G. Carr (admitted *pro hac vice*)
600 Superior Avenue, E., Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
Email:  sriley@mcdonaldhopkins.com
          dagay@mcdonaldhopkins.com
          nmiller@mcdonaldhopkins.com
          mcarr@mcdonaldhopkins.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Erica D. Clark (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900
Email: erica.clark@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

14

**<u>Certificate of Service</u>**

I certify that on April 20, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Matthew D. Cavenaugh*
Matthew D. Cavenaugh

## Exhibit A

**Movants' Proof of Claim**

| United States Bankruptcy Court for the Southern District of Texas | Your Mail ID is | 214422550 |
|---|---|---|

| | **For Court Use Only** | |
|---|---|---|
| **Name of Debtor:** Invacare Corporation | Claim Number: | 0000010282 |
| **Case Number:** 23-90068 | File Date: | 03/15/2023 13:38:36 |

# Proof of Claim (Official Form 410)

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. With the exception of 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

**04/22**

---

| **Part 1:** | **Identify the Claim** |
|---|---|

**1.   Who is the current creditor?**
Name of the current creditor (the person or entity to be paid for this claim):   Marty J. Raines and Shane Raines

Other names the creditor used with the debtor: _____

**2.   Has this claim been acquired from someone else?**   ☑ No   ☐ Yes.   From whom? _____

**3.   Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | | Where should payments to the creditor be sent? (if different) | |
|---|---|---|---|
| Name | Marty J. Raines and Shane Raines | Name | White & Weddle, PC |
| Address | Crowe & Dunlevy, PC | Address | 630 NE 63rd Street |
| | c/o Christina W. Stephenson | | |
| | 2525 McKinnon St., Suite 425 | | |
| City | Dallas | City | Oklahoma City |
| State | TX   ZIP Code  75201 | State | OK   ZIP Code  73105 |
| Country (if International): | | Country (if International): | |
| Phone: | 214-420-2140 | Phone: | 405-858-8899 |
| Email: | crissie.stephenson@crowedunlevy.com | Email: | charles@whiteandweddle.com |

| **4. Does this claim amend one already filed?** | **5. Do you know if anyone else has filed a proof of claim for this claim?** |
|---|---|
| ☑ No | ☑ No |
| ☐ Yes. | ☐ Yes. |
| Claim number on court claims register (if known) _____ | Who made the earlier filing? |
| Filed on _____ <br> MM / DD / YYYY | _____ |

Page 1 of 3

**Part 2:  Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes.

Last 4 digits of the debtor's account or any number you use to identify the debtor:

___ ___ ___ ___

**7. How much is the claim?**

$ 75,000.00

**Does this amount include interest or other charges?**

☑ No

☐ Yes.  Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples:  Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.  Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).  Limit disclosing information that is entitled to privacy, such as health care information.

Other Basis
_____

Strict Product Liability & Negligence

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other.  Describe:

_____

**Basis for perfection:**

_____

Attach redacted copies of documents, if any, that show evidence of perfection of security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured: $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any
default as of the date of the petition:  $_____

**Annual Interest Rate** (when case was filed)   _____%

☐ Fixed   ☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes.  **Amount necessary to cure any default as of the date of petition.**

$_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes.  Identify the property:

_____

---

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other.  Specify subsection of 11 U.S.C. § 507 (a) (_____) that applies.

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

A claim may be partly priority and partly nonpriority.  For example, in some categories, the law limits the amount entitled to priority.

**Amount entitled to priority**

$_____

$_____

$_____

$_____

$_____

$_____

---

**13. Does this claim qualify as an Administrative Expense under 11 U.S.C. § 503(b)(9)?**

☑ No

☐ Yes. **Amount that qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9):** $_____

| Part 3: | Sign Below |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other co-debtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*Charles C. Weddle*                                   03/15/2023 13:38:36
_____        _____
Signature                                                             Date

**Provide the name and contact information of the person completing and signing this claim:**

Name        Charles C. Weddle

Address     White & Weddle, PC

            630 NE 63rd Street

City        Oklahoma City

State       OK                                    Zip    73105

Country (in international)  _____

Phone       405-858-8899

Email       charles@whiteandweddle.com

FILED IN DISTRICT COURT
McClain County, Oklahoma

IN THE DISTRICT COURT OF MCCLAIN COUNTY,

STATE OF OKLAHOMA

NOV 19 2018

Kristel Gray, Court Clerk

by _____ ᴄᴄᴘ _____ , Deputy

| | | |
|---|---|---|
| MARTY JOE RAINES and SHANE RAINES, as parents and next friends of CAYLIN RAINES, Deceased, and MARTY JOE RAINES, Individually,<br><br>Plaintiffs,<br><br>vs.<br><br>INVACARE CORPORATION; CARTER HEALTHCARE, LLC, formerly known as CARTER HEALTHCARE, INC.; FREEDOM MANAGEMENT GROUP, L.L.C. operating under the trade name of ADVANTAGE MOBILITY & MEDICAL EQUIPMENT; and CARL LEROY HARRYMAN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CJ-2017-138<br>Judge Leah Edwards |

### THIRD AMENDED PETITION

COME NOW the Plaintiffs, Marty Joe Raines and Shane Raines, as parents and next friends of Caylin Raines, Deceased (hereafter "Plaintiffs"), by and through their attorneys of record, Jeremy Z. Carter of The Carter Law Firm, and Joe E. White, Jr. and Charles C. Weddle III of White & Weddle, P.C., and, for their causes of action against the Defendants, Invacare Corporation (hereafter "Invacare" or "Defendant Invacare"), Carter Healthcare, LLC, formerly known as Carter Healthcare, Inc. (hereafter "Carter" or "Defendant Carter"), Freedom Management Group L.L.C. operating under the trade name Advantage Mobility & Medical Equipment (hereafter "Freedom," "Advantage," or "Defendant Advantage"), and Carl Leroy Harryman (hereafter "Harryman" or "Defendant Harryman"), allege and state as follows:

1.     Plaintiffs were at all times herein citizens of the State of Oklahoma.

2.     Defendant Harryman was at all times herein a citizen of the State of Oklahoma.

3.     Upon information and belief, Defendant Invacare was at all times material herein a corporation organized and existing under the laws of a state other than Oklahoma and not licensed to do business in the State of Oklahoma.

4.     Upon information and belief, Defendant Invacare's corporate headquarters are located at 1 Invacare Way, Elyria, Ohio  44036, and it can be served through its registered service agent for process, CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, OH  43219.

5.     Upon information and belief, at all times material herein, Defendant Invacare controlled the design, manufacture, distribution, and sale of the ATO SOLARA2G, SOLARA TILT-IN-SPACE Wheelchair, serial number ("SN") 09BE004084 (hereafter "Wheelchair"), that was occupied or used by the Plaintiff Caylin Raines, Deceased, on April 6, 2017.

6.     Upon information and belief, Defendant Carter Healthcare, LLC, formerly known as Carter Healthcare, Inc. (hereafter "Carter" or "Defendant Carter"), was at all time material herein a corporation organized and existing under the laws of the state of Oklahoma, with its principal place of business located at 3105 S. Meridian Avenue, Oklahoma City, OK  73119, and it can be served through its registered service agent for process, Stanley F. Carter, 3105 S. Meridian Avenue, Oklahoma City, OK  73119.

7.     Upon information and belief, Defendant Freedom Management Group L.L.C., operating under the trade name Advantage Mobility & Medical Equipment

(hereafter "Freedom", "Advantage" or "Defendant Advantage"), was at all times material herein a corporation organized and existing under the laws of the state of Oklahoma, with its principal place of business located at 1845 W. Reno Avenue, Oklahoma City, OK 73106, but its status has been cancelled; thus, it is no longer in good standing per the "Entity Summary Information" Oklahoma Secretary of State. See https://www.sos.ok.gov/corp/corpInformation.aspx?id=3512044255. Upon information and belief, it can still be served through its registered service agent for process, Amy Hoover, 3129 N. Timer Avenue, Bethany, OK 73008.

8.      Upon information and belief, Defendant Invacare shipped the "Wheelchair" to Carter Healthcare, Inc. in March of 2009. Subsequently, the Plaintiffs acquired the "Wheelchair" from Advantage Mobility & Medical Equipment in Oklahoma City, Oklahoma. Thus, Defendants Invacare, Carter, and Advantage were engaged in interstate commerce and were doing business in the State of Oklahoma by holding themselves out to the public and citizens of, among others, the State of Oklahoma as designers, manufacturers, and/or sellers of wheelchairs at all material times herein.

9.      That on or about April 6, 2017, Plaintiffs were involved in a multi-vehicle accident caused by Defendant Harryman near Highway 76 and NE 70th, Blanchard, Oklahoma, resulting in the wrongful death of Caylin Raines and serious personal injuries to Marty Joe Raines.

10.      Upon information and belief and at all times material herein, Defendant Harryman was operating a 2015 GMC pickup [VIN# 1GD421C83FF128530] on April 6, 2017.

3

11.     Due to the acts or omissions on the part of the Defendants as alleged herein, Plaintiffs Marty Joe Raines and Shane Raines, as parents and next friends of Caylin Raines, Deceased, have been severely damaged.

12.     The matter sued on herein occurred in McClain County, State of Oklahoma.

13.     Pursuant to 12 O.S. §2004(F), this Court has proper subject matter jurisdiction and, pursuant to 12 O.S. §141, venue is proper in McClain County.

14.     The amount in controversy herein exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

## FIRST CAUSE OF ACTION

### NEGLIGENCE – AS TO DEFENDANT HARRYMAN

15.     Plaintiffs adopt and incorporate herein paragraphs 1 through 14 above, as if more fully stated out herein, and would further allege and state as follows:

16.     That on April 6, 2017, at or near State Highway 76 and Northeast 70th Street in the city limits of Blanchard, McClain County, Oklahoma, Plaintiff Marty Joe Raines was driving a 1995 Chevrolet conversion van also occupied by Caylin Raines and Delta McGrew when another vehicle (2015 GMC pickup) driven by Defendant Harryman failed to yield the right-of-way, causing a collision with a vehicle (2014 Nissan Altima driven by John Phillips) and causing it to strike Plaintiff Marty Joe Raines' vehicle (1995 Chevrolet conversion van) resulting in, among other things, the death of Caylin Raines and serious personal injuries to Marty Joe Raines.

17.     Plaintiff Caylin Raines was a retrained passenger in the vehicle driven by Plaintiff Marty Joe Raines and was occupying the "Wheelchair" which was properly strapped down or restrained at the time of the accident alleged in paragraph 16 above.

18.     Plaintiffs state that they in no way contributed to the collision or otherwise caused their injuries in any way and, thus, Marty Joe Raines and Caylin Raines are fault-free.

19.     That the collision and Plaintiffs' resulting injuries were caused and brought about by the negligence and wanton disregard of Defendant Harryman in any and/or all of the following particulars, to-wit:

(a)     That Defendant Harryman was guilty of negligence in that he carelessly, recklessly, and, with gross disregard of the rights of the Plaintiffs, drove his vehicle in such a manner as to cause the accident alleged in paragraph 16 above. Had Defendant Harryman exercised ordinary care by properly controlling the movement and direction of his vehicle, the collision would have been avoided;

(b)     That Defendant Harryman was negligent in that he failed to devote proper time and attention to his driving, and his non-attention thereby caused the accident alleged in paragraph 16 above;

(c)     That Defendant Harryman failed to obey traffic laws and road markings;

(d)     That Defendant Harryman drove in a careless and wanton manner without regard for the safety of persons or property, thus violating 47 O.S. §11-901 and making him negligent per se;

(e)     That Defendant Harryman failed to observe and obey the rules of the road;

(f)     That Defendant Harryman operated his vehicle in a manner not reasonable and proper; and

(g)     That Defendant Harryman failed to yield the right-of-way to Plaintiffs' vehicle, and Defendant is negligent per se.

20.    That as the direct and proximate cause of the aforementioned negligence and reckless acts of Defendant Harryman, the Plaintiffs have suffered severe personal injuries, including the death of Caylin Raines, and have suffered actual damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

21.    That based on the Defendant Harryman's intentional, willful, reckless, and/or gross disregard of Plaintiffs' rights, the Plaintiffs also seek punitive damages against Defendant Harryman in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## SECOND CAUSE OF ACTION

### CLAIMS FOR MANUFACTURERS' PRODUCTS LIABILITY, NEGLIGENT DESIGN AND MANUFACTURING, MANUFACTURERS' LIABLITY FOR FAILURE TO WARN, AND NEGLIGENT FAILURE TO WARN AS TO DEFENDANT INVACARE

22.    Plaintiffs adopt and incorporate herein paragraphs 1 through 21 above and would further allege and state as follows:

23.    Upon information and belief, Defendant Invacare was in the business of designing, manufacturing, constructing, testing, labeling, distributing, and selling the "Wheelchair" that was occupied or used by the Plaintiff, Caylin Raines, Deceased, on April 6, 2017.

24.    Defendant Invacare controlled the design, engineering, manufacturing, construction, testing, labeling, distribution, and sale of the "Wheelchair" in its ordinary course of business.

25.    The "Wheelchair" and/or component part(s) thereto was defectively designed, developed, engineered, fabricated, assembled, manufactured, tested, labeled,

6

advertised, marketed, promoted, sold, distributed, delivered, and/or supplied by Defendant Invacare.

26.     Upon information and belief, Defendant Invacare had received complaints of weld(s) in the frame of similar ATO SOLARA2G, SOLARA TILT-IN-SPACE Wheelchairs breaking, cracking, or otherwise separating prior to the accident alleged in paragraph 16 above.

27.     At all times relevant hereto, Defendant Invacare knew or, through the exercise of reasonable care, should have known that the "Wheelchair" and/or component part(s) thereof which it designed, developed, engineered, fabricated, assembled, manufactured, tested, labeled, advertised, marketed, promoted, sold, distributed, delivered, and/or supplied was not safe for its intended and/or reasonably foreseeable use because it was, among other things, structurally unsound and/or uncrashworthy due to weld(s) in the frame breaking, cracking, failing, or otherwise separating.

28.     That as a result of the automobile accident alleged in paragraph 16 above, the "Wheelchair" failed to properly function as intended or as reasonably expected due to, among other things, a weld in the frame breaking, failing, or separating which caused or contributed to Plaintiffs' injuries.

29.     The directions, instructions, and warnings related to the "Wheelchair" provided by the Defendant Invacare are inadequate and not of a nature that an ordinary user would expect, thus rendering the "Wheelchair" defective.

30.     At no time did the Plaintiffs misuse the "Wheelchair."

31.     At no time did the Plaintiffs knowingly or voluntarily assume the risk of any potential harm associated with the use of the "Wheelchair" for the purpose for which it was intended.

32.     The "Wheelchair," at the time it left the possession of Defendant Invacare, was inherently dangerous for its intended use and was not fit for its intended purpose, which presented and constituted an unreasonable danger or risk of harm and injury to a person who used, consumed, or might reasonably be expected to be affected by the "Wheelchair," including the Plaintiffs, as follows:

    (a)     The "Wheelchair" failed to adequately function;

    (b)     The "Wheelchair" was improperly tested, studied, researched, evaluated, designed, engineered, manufactured, assembled, constructed, inspected, labeled, distributed, marketed, or otherwise prepared for use and sold by Defendant Invacare prior to the "Wheelchair" being placed in the stream of commerce;

    (c)     The "Wheelchair" was defectively designed, engineered, manufactured, constructed, and/or assembled;

    (d)     The "Wheelchair" was not reasonably fit for its ordinary purpose as an ordinary consumer would expect; and

    (e)     The "Wheelchair" was structurally inadequate, insufficient, and/or unsound in that it failed to maintain its integrity because a weld in the frame broke during ordinary use by the consumer and said ordinary use was reasonably expected by Defendant Invacare.

33.     That Defendant Invacare approved and/or certified that the "Wheelchair" at issue was fit for its intended purpose when, in fact, the "Wheelchair" was defective or otherwise unreasonably dangerous.

34.     Upon information and belief, Defendant Invacare knew or should have known that the "Wheelchair" was unreasonably dangerous or otherwise defective based upon similar prior complaints of weld(s) in the frame and/or at joints of ATO

SOLARA2G, SOLARA TILT-IN-SPACE Wheelchairs breaking, cracking, or otherwise separating.

35.     That Defendant Invacare failed to adequately warn, advise, or otherwise notify the Plaintiffs of precautions required and/or risks associated with use of the "Wheelchair."

36.     That the defect(s) in the "Wheelchair" caused or contributed to the Plaintiffs' severe personal injuries.

37.     That Defendant Invacare was willfully and grossly in violation of its duties.

38.     That the Plaintiffs pray for actual and punitive damages for their manufacturers' product liability claims in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) against Defendant Invacare and for attorney fees, interest, costs, and such other relief as this Court deems just, proper, and right.

39.     That Defendant Invacare was negligent by breaching its duty to use ordinary care to ensure that the "Wheelchair" was reasonably safe for use; thus, Defendant Invacare and/or any and all of its employees negligently, carelessly, willfully, and/or intentionally failed to provide a reasonably safe "Wheelchair" for the Plaintiffs.

40.     That the "Wheelchair" was negligently and/or carelessly tested, studied, researched, evaluated, designed, engineered, manufactured, assembled, installed, constructed, inspected, labeled, distributed, marketed, or otherwise prepared for use and sale by Defendant Invacare.

41.     That Defendant Invacare and/or any and all of its employees negligently, carelessly, willfully, and/or intentionally failed to warn the Plaintiffs of the dangerous

condition then and there existing when Defendant Invacare knew or, in the exercise of ordinary care, should have known that said warning was necessary to prevent injury to the Plaintiffs. Specifically, this includes Defendant Invacare's failure to adequately warn, advise, or otherwise notify the Plaintiffs of precautions required and/or risks associated with use of the "Wheelchair," including, but not limited to, it was structurally unsound and/or not crashworthy due to weld(s) in the frame breaking, cracking, failing, or otherwise separating, thus subject to failing or breaking when the "Wheelchair" was involved in an automobile collision.

42.   The negligence, carelessness, and recklessness of Defendant Invacare consisted of, among other things, the following acts and/or omissions:

(a)   Failing to use reasonable care in the design, manufacture, labeling, advertising, marketing, promotion, sale, distribution, delivery, and supply of the "Wheelchair";

(b)   Advertising, marketing, promoting, selling, labeling, distributing, delivering, supplying, servicing, maintaining, designing, manufacturing, and/or preparing the "Wheelchair" in a condition that lacked the necessary strength to withstand the amount of force and pressure to which the "Wheelchair" would reasonably be subjected to in the event of an automobile collision;

(c)   The "Wheelchair" was constructed of improper or inappropriate materials given the conditions under which the "Wheelchair" was intended to be used;

(d)   Advertising, marketing, promoting, selling, distributing, delivering, and/or supplying an unsafe "Wheelchair";

(e)   Inadequately assessing the risk of injuries or harm occurring as a result of a malfunction of the "Wheelchair";

(f)   Failing to adequately identify, investigate, correct, and/or mitigate the knowledge gained from prior complaints involving weld(s) in the frame and/or at joints of ATO SOLARA2G, SOLARA TILT-IN-SPACE Wheelchairs breaking, cracking or otherwise separating to lessen the risk of harm to users such as the Plaintiffs;

(g)     Failing to exercise reasonable care and take adequate precautions to warn Plaintiffs and others similarly situated against the reasonably foreseeable dangers created by the "Wheelchair" to which Plaintiffs and others similarly situated would be exposed, but which were not obvious dangers or risks that said ordinary users would expect from foreseeable use of the "Wheelchair";

(h)     Providing inadequate directions, instructions, and warnings which were ambiguous in nature and failed to warn of the reasonably foreseeable dangers created by the "Wheelchair" and the potential risk of serious bodily injury or death associated with said dangers;

(i)      Failing to adequately warn, advise, or otherwise notify the Plaintiffs of precautions required and/or risks associated with use of the "Wheelchair," including, but not limited to, that the "Wheelchair" was unreasonably dangerous or otherwise defective based upon substantially similar prior complaints of weld(s) in the frame and/or at joints in the frame breaking, cracking or otherwise separating;

(j)      Failing to warn that the "Wheelchair" was not safe for its intended use;

(k)     That Defendant Invacare was negligent in meeting/satisfying industry customs, standards, and/or requirements necessary for placing the "Wheelchair" in the stream of commerce; and

(l)      Such other acts of negligence, carelessness, and recklessness as will be determined through discovery.

43.     Defendant Invacare was negligent in failing to warn the Plaintiffs about certain hazards it knew about or should have known about including, but not limited to, dangerous, unsafe, and defective condition of the "Wheelchair"; thus, Defendant Invacare's negligent breach of its duty to warn (negligent failure to warn claim) is also a concurrent cause of, among other things, the death of Caylin Raines and serious personal injuries to Marty Joe Raines.

44.     That at the time of her injuries and resulting death, Plaintiff Caylin Raines was twenty (20) years of age.

45.     That as a result of the acts or omissions of the Defendants, the Plaintiffs suffered injuries on April 6, 2017, and the Plaintiffs in no way contributed to the cause of their injuries.

46.     As a result of the accident alleged in paragraph 16 above, the "Wheelchair" occupied by Caylin Raines broke or failed concurrently causing, among other things, the death of Caylin Raines and serious personal injuries to Marty Joe Raines.

47.     That as a proximate cause of the negligent acts or omissions of Defendant Invacare, the Plaintiffs have suffered and continue to suffer actual damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

48.     That based on Defendant Invacare's intentional, willful, reckless, and/or gross disregard of Plaintiffs' rights, Plaintiffs also seek punitive damages against Defendant Invacare in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

### THIRD CAUSE OF ACTION

### CLAIM FOR NEGLIGENCE AND NEGLIGENT FAILURE TO WARN AS TO DEFENDANTS CARTER AND ADVANTAGE

49.     Plaintiffs adopt and incorporate herein paragraphs 1 through 48 above and would further allege and state as follows:

50.     Upon information and belief, Defendants Carter and Advantage distributed and/or sold the "Wheelchair" that was occupied or used by Plaintiff Caylin Raines, Deceased, on April 6, 2017.

51.     Defendants Carter and Advantage and/or any and all of their employees owed the Plaintiffs the duty to exercise ordinary care to avoid injuring them which included the duty to warn them.

52.     Upon information and belief, Defendants Carter and/or Advantage and/or any and all of their employees did not exercise reasonable care in the distribution and/or sale of the "Wheelchair" that was occupied or used by the Caylin Raines, Deceased, on April 6, 2017.  This includes negligently failing to assemble, inspection, and/or maintain the "Wheelchair" and negligently failing to pass on warnings or instructions for use from Defendant Invacare about the dangers and proper use of the "Wheelchair."

53.     The negligence, carelessness, and recklessness of Defendants Carter and/or Advantage and/or any and all of their employees also consisted of, among other things, the following acts and/or omissions:  Failing to use reasonable care to adequately identify, investigate, and record the knowledge gained from prior adverse events, complaints, or product failures involving said "Wheelchair"[1]; failing to adequately correct, mitigate, and/or prevent harm to persons and property caused by the unreasonably dangerous, hazardous, or otherwise defective condition of the "Wheelchair" or otherwise; and such other acts of negligence, carelessness, and recklessness as will be determined through discovery.

54.     Defendants Carter and/or Advantage and/or any and all of their employees were negligent in failing to warn the Plaintiffs about certain hazards they knew about or

---

[1] This includes failing to adequately warn, advise, or otherwise notify the Plaintiffs of precautions required and/or risks associated with use of the "Wheelchair," including, but not limited to, it was structurally unsound and/or not crashworthy due to weld(s) in the frame breaking, cracking, failing, or otherwise separating and, thus, subject to failing or breaking when the "Wheelchair" was involved in an automobile collision.

should have known about, including, but not limited to, dangerous, unsafe, and defective condition of the "Wheelchair"; thus, Defendants Carter's and/or Advantage's negligent breach of their duty to warn (negligent failure to warn claim) is also a concurrent cause of, among other things, the death of Caylin Raines and serious personal injuries to Marty Joe Raines.

55.     That as a concurrent proximate cause of the negligent acts or omissions of Defendants Carter and Advantage, the Plaintiffs have suffered and continue to suffer actual damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

56.     That based on Defendants Carter's and Advantage's intentional, willful, reckless, and/or gross disregard of Plaintiffs' rights, Plaintiffs also seek punitive damages against Defendants Carter and Advantage in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

### FOURTH CAUSE OF ACTION

### WRONGFUL DEATH

57.     Plaintiffs Marty Joe Raines and Shane Raines, as parents and next friends of Caylin Raines, Deceased, bring their Fourth Cause of Action pursuant to 12 O.S. §§1053, *et seq.* and re-allege and incorporate by reference the above paragraphs 1 through 56 above.

58.     Plaintiffs Marty Joe Raines and Shane Raines are the surviving parents of the deceased, Caylin Raines, who died in the manner alleged above on April 6, 2017.

59.     By reason of the death of Caylin Raines, the decedent is survived by, among others, her parents, Marty Joe Raines and Shane Raines, who have suffered grief and have been deprived of the decedent's companionship, support (both love and

affection), destruction of the parental relationship, loss of consortium, and any other right of recovery pursuant to 12 O.S. §§1053, *et seq.*, all contributing to damage in the sum of an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

60.     By further reason of the careless, reckless, negligent acts, wrongful acts or omissions, and want of care of each Defendant, Plaintiffs Marty Joe Raines and Shane Raines incurred medical expenses and funeral expenses as a result of the acts or omissions of each Defendant as set forth herein.

61.     As a proximate result of the above-described wrongful acts of each Defendant, the decedent, Caylin Raines, suffered severe multiple injuries, along with severe mental pain and anguish which caused her death, loss of parental/child association, medical and funeral expenses, and, therefore, has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

62.     That based on each Defendant's willful, reckless, and gross disregard of the rights of Caylin Raines, Plaintiffs Marty Joe Raines and Shane Raines seek punitive damages against each Defendant in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## FIFTH CAUSE OF ACTION

### (NEGLIGENCE – DIRECT VICTIM CLAIM)

63.     Plaintiffs adopt and incorporate herein paragraphs 1 through 62 above, as if more fully stated herein, and would further allege and state as follows:

64.     Plaintiff Marty Joe Raines was directly physically involved in and witnessed the serious injuries to her daughter, Caylin Raines.

65.     As a result of being directly physically involved in and viewing the severe personal injuries and resulting in the death of Plaintiff Caylin Raines, Plaintiff Marty Joe Raines suffered additional serious injury.

66.     A close familial relationship existed between the Plaintiffs, Marty Joe Raines and Caylin Raines.

67.     That based on each Defendant's wrongful acts or omission as well as their intentional, willful, reckless, and/or gross disregard of Plaintiff Marty Joe Raines's rights, she seeks actual and punitive damages against each Defendant in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## SIXTH CAUSE OF ACTION

### BREACH OF WARRANTIES

68.     Plaintiffs adopt and incorporate herein paragraphs 1 through 67 above, as if more fully stated herein, and would further allege and state as follows:

69.     In designing, developing, engineering, fabricating, assembling, manufacturing, testing, maintaining, advertising, marketing, promoting, selling, distributing, delivering, supplying, and/or otherwise introducing the "Wheelchair" into the stream of commerce, Defendants expressly and/or impliedly warranted that the "Wheelchair" was merchantable, fit, and safe for the ordinary and particular purposes for which it was supplied and that it was free from defects.

70.     Defendants expressly warranted that the "Wheelchair" was safe for its intended use.

71.     Defendants breached their express and implied warranties in that the "Wheelchair" was not merchantable, was not fit and safe for the ordinary and particular purposes for which it was supplied, and was defective.

72.     As a direct and proximate result of the Defendants' breach of express and implied warranties, Plaintiffs were seriously injured, including the death of Plaintiff Caylin Raines on April 6, 2017.

73.     Defendants have been provided timely notice of the defect and promptly notified of Plaintiffs' injuries.

WHEREFORE, premises considered, Plaintiffs pray for judgment in their favor against each Defendant for (a) actual damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00); (b) punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00); (c) Plaintiffs' prejudgment interest, costs, and a reasonable attorney fee; and (d) such other relief to which Plaintiffs may be entitled.

Respectfully submitted,


JOE E. WHITE, JR.          OBA #12930
CHARLES C. WEDDLE III  OBA #18869
WHITE & WEDDLE, P.C.
630 N.E. 63rd Street
Oklahoma City, Oklahoma  73105
(405) 858-8899
(405) 858-8844 FAX
joe@whiteandweddle.com
charles@whiteandweddle.com

and

JEREMY Z. CARTER      OBA#19772
THE CARTER LAW FIRM
P.O. Box 255
133 N.W. 32nd Street
Newcastle, Oklahoma  73065
(405) 392-3300
(405) 392-2417 FAX
Jeremy@jzcarterlaw.com

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

*Attorneys for Plaintiffs,*
*Marty Joe Raines and Shane Raines, as*
*parents and next friends of Caylin Raines,*
*Deceased and Marty Joe Raines,*
*Individually*