**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| INVACARE CORPORATION, *et al.*,[1] | ) |
| | ) Case No. 23-90068 (CML) |
| Reorganized Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

**INVACARE CORPORATION'S OBJECTION TO PROOFS OF CLAIM NOS. 10282**
**AND 304 FILED BY MARTY J. AND SHANE RAINES**

> **This is an objection to your claim. The objecting party is asking the Court to disallow the claim that you filed in this bankruptcy case. You should immediately contact the objecting party to resolve the dispute. If you do not reach an agreement, you must file a response to this objection and send a copy of your response to the objecting party within 30 days after the objection was served on you. Your response must state why the objection is not valid. If you do not file a response within 30 days after the objection was served on you, your claim may be disallowed without a hearing.**

Invacare Corporation ("Invacare"), one of the above-captioned reorganized debtors[2] (the "Reorganized Debtors") files this Objection (the "Objection") to Proofs of Claim Nos. 10282 and 304 (the "Raines Claims") filed by Marty J. and Shane Raines, as parents and next friends of Caylin Raines ("Raines"). In support of the Objection, Invacare attaches as **Exhibit A** the *Declaration of Gretchen Schuler in Support of Invacare Corporation's Objection to Proof of*

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are:  Invacare Corporation (0965); Freedom Designs, Inc. (4857); and Adaptive Switch Laboratories, Inc. (6470). The corporate headquarters and the mailing address for the Reorganized Debtors is 1 Invacare Way, Elyria, Ohio 44035.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' First Amended Joint Chapter 11 Plan of Invacare Corporation and Its Debtor Affiliates (Technical Modifications)* [Docket No. 502] (as amended, supplemented, or modified from time to time, the "Plan"), as applicable.  On May 18, 2023, the Court entered the Corrected Order Confirming the Debtors' First Amended Joint Chapter 11 Plan of Invacare Corporation and Its Debtor Affiliates (Technical Modifications) [Docket No. 576] (the "Confirmation Order"), which corrected internal cross references in the Plan and Confirmation Order.

*Claim Nos. 10282 and 304 Filed by Marty J. and Shane Raines* (the "<u>Declaration</u>") and represents as follows:

<u>**Jurisdiction and Venue**</u>

1.      The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Invacare confirms its consent to the entry of a final order by the Court in connection with this Objection.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a) and 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007, and Rules 9013-1 and 3007-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>").

<u>**Background**</u>

**A.  The Pre-Petition Litigation.**

4.      On August 17, 2017, Raines filed suit against Invacare Corporation and Carl Leroy Harryman in the McClain County, Oklahoma District Court under Case No. CJ-2017-138 (the "<u>Lawsuit</u>").  The lawsuit arises out of a motor vehicle accident caused by Harryman, who ran his heavy-duty pickup truck into the rear of a vehicle that was behind a van driven by Marty Raines as she waited to make a left turn.  Raines alleges that the force of the impact from Harryman's truck caused a chain reaction that resulted in the Raines vehicle being rear-ended and knocked into a deep culvert off the side of the highway.  At the time of the accident, Caylin Raines was seated inside the van in a wheelchair designed and manufactured by Invacare.  Raines further alleges that both Marty J. and Caylin Raines sustained injuries as a result of the accident, and Caylin Raines later passed away.  Carter Healthcare, LLC and Freedom Management Group, LLC, sellers and distributors of the wheelchair, were later added as defendants in the Lawsuit.  Harryman settled

out of the lawsuit and was dismissed.  The Lawsuit seeks damages in an amount in excess of $75,000 and includes claims for products liability, negligence, and breach of warranty, among other claims.

5.       The parties were in the midst of discovery when the Reorganized Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Court for the Southern District of Texas.  The Lawsuit was stayed during the Reorganized Debtors' bankruptcy cases and is still pending as of the date of the filing of this Objection.  Some, but not all discovery has been completed, including depositions of Marty J. and Shane Raines, one passenger in the Raines' vehicle, and three corporate representatives of Invacare. The parties were also retaining experts in the fields of metallurgy, engineering, and FDA regulations.

**B.  The Raines Claim.**

6.       On March 15, 2023, Raines filed Claim No. 10282 against Invacare.  The Raines Claim asserts a claim in the amount of $75,000.00, and attached a copy of the Third Amended Petition in the Lawsuit. *See* Proof of Claim, No. 10282 (the "First Raines Claim"). On January 8, 2024, Raines amended the First Raines Claim and filed Claim No. 304 against Invacare, asserting a claim in the amount of "at least $75,000.00," and again attached a copy of the Third Amended Petition (the "Second Raines Claim" and together with the First Raines Claim, the "Raines Claims").  Copies of the Raines Claims are attached hereto as **Exhibit B**.  No other supporting documentation is attached to the Raines Claims.

**C.  The Claims Reconciliation Process.**

7.       On February 15, 2023, the Court entered the *Order (I) Establishing Deadline for the Filing of Proofs of Claim, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. 186], establishing certain dates and deadlines for filing proofs of claim in these chapter 11 cases.  Among other things, the Bar Date Order established March 16,

2023, at 5:00 p.m., prevailing Central Time, as the deadline for all non-governmental entities wishing to assert a claim against any of the Reorganized Debtors that arose before the Petition Date to file a proof of such claim in writing.

8.     On March 2, 2023, the Reorganized Debtors filed their statements of financial affairs and schedules of assets and liabilities [Docket Nos. 259-261, 262-264] (together, as amended, the "SOFAs and Schedules").  Raines's claim amount is listed as undetermined, and the claim is listed as a contingent, unliquidated, and disputed litigation-related claim on Invacare's SOFAs and Schedules.

9.     Invacare does not believe that Invacare is liable to Raines in the full amount of the Raines Claims, and objects to the Raines Claims as detailed herein.  Instead, Invacare believes that the Raines Claims should be disallowed in their entirety.

## **Objection**

10.    A filed proof of claim is deemed allowed, unless a party in interest objects. 11 U.S.C. § 502(a).  See also Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim.").  Further, section 502(b)(1) of the Bankruptcy Code provides that the court "shall determine the amount of such claim … as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—such claim is unenforceable against the debtor and the property of the debtor …" 11 U.S.C. § 502(b)(1).

11.    A properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and the amount of the claim under section 502(a) of the Bankruptcy Code.  *See* Fed. R. Bankr. P. 3001(f).  Whether a claim is allowable "generally is determined by applicable nonbankruptcy law." In re W.R. Grace & Co., 346 B.R. 672, 674 (Bankr. D. Del. 2006).

12.     A proof of claim loses the presumption of *prima facie* validity under Bankruptcy Rule 3001(f) if an objecting party refutes at least one of the allegations that are essential to the claim's legal sufficiency.  See, e.g., In re Fidelity Holding Co., Ltd., 837 F.2d 696, 698 (5th Cir. 1988).  Once an allegation is refuted, the burden reverts to the claimant to prove the validity of its claim by a preponderance of the evidence.  See id.  Despite this shifting burden during the claim objection process, "the ultimate burden of proof always lies with the claimant." Id.

**A.      The Raines Claims Are Not Entitled to *Prima Facie* Validity.**

13.     As an initial matter, the Raines Claims fail to properly identify the amount of the alleged claim and provide appropriate supporting documentation.  "A properly executed proof of claim includes: the creditor's name and address; the basis for the claim; the date the debt was incurred; the classification of the claim; the amount of the claim; and supporting documentation." In re Dow Corning Corp., 250 B.R. 298, 321 (Bankr. E.D. Mich. 2000) (citation omitted); *see also* In re Hamrick, 622 B.R. 659, 667 n.9 (Bankr. D.S.C. 2020) ("This Court questions how a claim may have *prima facie* evidence as to the amount when the proof of claim lists the amount as 'unknown' or 'to be determined', especially considering that the burden under state law is generally on the party asserting damages to prove the amount of such damages.") (citation omitted).  Here, the Raines Claims assert that the amount of the claim is "at least $75,000" without further explanation.

14.     Accordingly, the Raines Claims lack *prima facie* validity, and the Court cannot treat the Raines Claims as establishing a right to payment from Invacare without further proceedings to liquidate the claim.  Absent Raines providing supporting documentation and detail for their claims, the Raines Claim should be disallowed; the only "evidence" attached to the Raines Claim is the Third Amended Petition, which simply identifies allegations with no supporting evidence.  Raines

should be required to submit supporting evidence regarding their alleged damages so that any amount owed can be liquidated, or the Raines Claims should be disallowed.

      **B.**    **Invacare Does Not Have Liability Related to the Raines Claims.**

      15.    Invacare vehemently disputes that it is liable for damages in any amount to the Raines, as Invacare believes Raines will be unable to prove a defect in the Invacare wheelchair or that such defect proximately led to the death of Caylin Raines.  Caylin Raines' death was caused by the negligence of only Harryman, as he ran his truck into the vehicles that were stopped on the highway in front of him.  After the Raines' vehicle came to rest, it was discovered that the wheelchair in which Caylin was riding was improperly restrained in the vehicle, and Caylin had not been properly restrained by the vehicle's passenger restraint system.  It was also discovered that the wheelchair suffered a broken weld on its frame as a result of the vehicle impacts.  It is the broken weld that forms the subject of the Raines' claims again Invacare.  Invacare contends that Raines will be unable to recover damages of any kind against Invacare under Oklahoma law.

      16.    The Raines claimants dispute Invacare's position on liability and damages.  In the event that the Raines Claims are not disallowed, to facilitate liquidation of the Raines Claims, Invacare respectfully requests that the parties mediate the Raines Claims in order to work toward a resolution.

<b><u>Reservation of Rights</u></b>

      17.    This Objection is limited to the grounds stated herein.  It is without prejudice to the rights of Invacare or any other party in interest to object to the Raines Claims on any additional grounds.  Invacare expressly reserves all further substantive or procedural objections it may have.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any prepetition claim against Invacare or any other Reorganized Debtor entity; (b) a waiver of any party's right to dispute any prepetition claim

on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this objection or any order granting the relief requested by this Objection; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of Invacare's rights under the Bankruptcy Code or any other applicable law.

18.     In the event that the Raines Claims are not disallowed and expunged on the grounds asserted herein, Invacare hereby reserves all rights to object to the Raines Claims, or any amended claim, on any other grounds.  Additionally, Invacare expressly reserves all rights to amend, modify, or supplement the objections asserted herein and to file additional objections to the Raines Claims.

## Notice

19.     Notice of this Objection has been provided to Raines in accordance with the Bankruptcy Rules. Invacare submits that such notice is sufficient and proper under the circumstances, and that no other further notice is requested.

WHEREFORE, Invacare respectfully requests that the Court enter the Order (i) sustaining the Objection in its entirety, (ii) disallowing or ordering mediation of the Raines Claims as requested herein, and (iii) granting such other and further relief as is just and proper under the circumstances.

Houston, Texas
Dated: February 1, 2024

/s/  Nicholas M. Miller

**MCDONALD HOPKINS LLC**
Shawn M. Riley (admitted *pro hac vice*)
David A. Agay (admitted *pro hac vice*)
Nicholas M. Miller (admitted *pro hac vice*)
Maria G. Carr (admitted *pro hac vice*)
600 Superior Avenue, E., Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
Email:  sriley@mcdonaldhopkins.com
        dagay@mcdonaldhopkins.com
        nmiller@mcdonaldhopkins.com
        mcarr@mcdonaldhopkins.com

*Co-Counsel to the Reorganized Debtors*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email:  mcavenaugh@jw.com
        jwertz@jw.com
        mstull@jw.com
        vargeroplos@jw.com

*Co-Counsel to the Reorganized Debtors*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Yusuf Salloum (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: ryan.bennett@kirkland.com
        yusuf.salloum@kirkland.com

*Co-Counsel to the Reorganized Debtors*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Erica D. Clark (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900
Email: erica.clark@kirkland.com

*Co-Counsel to the Reorganized Debtors*

## **<u>Certificate of Service</u>**

  I certify that on February 1, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

            */s/ Matthew D. Cavenaugh*
            Matthew D. Cavenaugh

## Exhibit A

**Schuler Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| INVACARE CORPORATION, *et al.*,[1] | ) | Case No. 23-90068 (CML) |
|  | ) |  |
| Reorganized Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF GRETCHEN SCHULER IN SUPPORT OF**
**INVACARE CORPORATION'S OBJECTION TO PROOF OF**
**CLAIM NOS. 10282 AND 304 FILED BY MARTY J. AND SHANE RAINES**

I, Gretchen Schuler, declare under penalty of perjury:

1.      I have personal knowledge of all of the facts set out in this Declaration.[2]

2.      I attended college at University of Mount Union, graduating in 1996 with a Bachelor of Arts, and attended graduate school at Cleveland State University, graduating in 1998 with a Masters of Arts.

3.      I am Vice President of Insurance Risk Management and Strategic Initiatives at Invacare. Previously, I was the Vice President of Insurance Risk Management, and I have been in my position at Invacare since August of 2020.  I have been with the company in various positions since 2011.

4.      As part of my job, I am familiar with and have read *Invacare Corporation's Objection to Proof of Claim Nos. 10282 and 304 filed by Marty J. and Shane Raines* (the

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Invacare Corporation (0965); Freedom Designs, Inc. (4857); and Adaptive Switch Laboratories, Inc. (6470). The corporate headquarters and the mailing address for the Reorganized Debtors is 1 Invacare Way, Elyria, Ohio 44035.

[2] Capitalized and undefined terms herein shall have the meanings ascribed to them in the Objection.

"Objection"). I am also familiar with and have read the Lawsuit and the Raines Claims. I believe that all of the facts stated in the Objection are accurate.

5.      By the Lawsuit, the Plaintiffs assert claims for products liability, negligence, and breach of warranty, among other claims. The damages are undetermined at this time.

6.      For the reasons outlined in the Objection, I do not believe that Invacare, the Debtors or the Reorganized Debtors, as applicable, have liability with respect to the Raines Claims. I believe that the entirety of the Raines Claims should be disallowed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing declaration are true and correct to the best of my knowledge, information and belief.

Date: February 1, 2024

*/s/ Gretchen Schuler*
Vice President, Insurance Risk Management
& Strategic Initiatives
Invacare Corporation

**Exhibit B**

**Raines Claims**

| United States Bankruptcy Court for the Southern District of Texas | Your Mail ID is | 214422550 |
|---|---|---|

| | For Court Use Only | |
|---|---|---|
| **Name of Debtor:** Invacare Corporation | Claim Number: | 0000010282 |
| **Case Number:** 23-90068 | File Date: | 03/15/2023 13:38:36 |

# Proof of Claim (Official Form 410)

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. With the exception of 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

**04/22**

---

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**
Name of the current creditor (the person or entity to be paid for this claim):     Marty J. Raines and Shane Raines

Other names the creditor used with the debtor: _____

**2. Has this claim been acquired from someone else?**   ☑ No  ☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name     Marty J. Raines and Shane Raines | Name     White & Weddle, PC |
| Address  Crowe & Dunlevy, PC | Address  630 NE 63rd Street |
|          c/o Christina W. Stephenson | |
|          2525 McKinnon St., Suite 425 | |
| City     Dallas | City     Oklahoma City |
| State    TX          ZIP Code  75201 | State    OK          ZIP Code  73105 |
| Country (if International): | Country (if International): |
| Phone:   214-420-2140 | Phone:   405-858-8899 |
| Email:   crissie.stephenson@crowedunlevy.com | Email:   charles@whiteandweddle.com |

| **4. Does this claim amend one already filed?** | **5. Do you know if anyone else has filed a proof of claim for this claim?** |
|---|---|
| ☑ No | ☑ No |
| ☐ Yes. | ☐ Yes. |
| Claim number on court claims register (if known) _____ | Who made the earlier filing? |
| Filed on _____ | _____ |
| MM / DD / YYYY | |

Page 1 of 3

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes.
Last 4 digits of the debtor's account or any number you use to identify the debtor:

____  ____  ____  ____

**7. How much is the claim?**   $  75,000.00

**Does this amount include interest or other charges?**

☑ No

☐ Yes.  Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples:  Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.  Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).  Limit disclosing information that is entitled to privacy, such as health care information.

Other Basis
_____

Strict Product Liability & Negligence

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other.  Describe:
_____

**Basis for perfection:**
_____

Attach redacted copies of documents, if any, that show evidence of perfection of security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                              $_____

Amount of the claim that is secured:     $_____

Amount of the claim that is unsecured: $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any
default as of the date of the petition:  $_____

**Annual Interest Rate** (when case was filed)  _____%
                                             ☐ Fixed  ☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes.  **Amount necessary to cure any default as of the date of petition.**

$_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes.  Identify the property:

_____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other.  Specify subsection of 11 U.S.C. § 507 (a) (_____) that applies.

*  Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

A claim may be partly priority and partly nonpriority.  For example, in some categories, the law limits the amount entitled to priority.

**Amount entitled to priority**

$_____

$_____

$_____

$_____

$_____

**13. Does this claim qualify as an Administrative Expense under 11 U.S.C. § 503(b)(9)?**

☑ No

☐ Yes.  **Amount that qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9):** $_____

| Part 3: | Sign Below |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other co-debtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*Charles C. Weddle*                                    03/15/2023 13:38:36
_____        _____
Signature                                                        Date

**Provide the name and contact information of the person completing and signing this claim:**

Name        Charles C. Weddle

Address    White & Weddle, PC

                630 NE 63rd Street

City          Oklahoma City

State         OK                                          Zip    73105

Country (in international) _____

Phone      405-858-8899

Email       charles@whiteandweddle.com

FILED IN DISTRICT COURT
McClain County, Oklahoma

IN THE DISTRICT COURT OF MCCLAIN COUNTY,

STATE OF OKLAHOMA

NOV 19 2018

Kristel Gray, Court Clerk

by _____ ᴶᴾ _____ , Deputy

| | |
|---|---|
| MARTY JOE RAINES and SHANE RAINES, as parents and next friends of CAYLIN RAINES, Deceased, and MARTY JOE RAINES, Individually, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| INVACARE CORPORATION; CARTER HEALTHCARE, LLC, formerly known as CARTER HEALTHCARE, INC.; FREEDOM MANAGEMENT GROUP, L.L.C. operating under the trade name of ADVANTAGE MOBILITY & MEDICAL EQUIPMENT; and CARL LEROY HARRYMAN, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. CJ-2017-138
Judge Leah Edwards

## **THIRD AMENDED PETITION**

COME NOW the Plaintiffs, Marty Joe Raines and Shane Raines, as parents and next friends of Caylin Raines, Deceased (hereafter "Plaintiffs"), by and through their attorneys of record, Jeremy Z. Carter of The Carter Law Firm, and Joe E. White, Jr. and Charles C. Weddle III of White & Weddle, P.C., and, for their causes of action against the Defendants, Invacare Corporation (hereafter "Invacare" or "Defendant Invacare"), Carter Healthcare, LLC, formerly known as Carter Healthcare, Inc. (hereafter "Carter" or "Defendant Carter"), Freedom Management Group L.L.C. operating under the trade name Advantage Mobility & Medical Equipment (hereafter "Freedom," "Advantage," or "Defendant Advantage"), and Carl Leroy Harryman (hereafter "Harryman" or "Defendant Harryman"), allege and state as follows:

1.     Plaintiffs were at all times herein citizens of the State of Oklahoma.

2.     Defendant Harryman was at all times herein a citizen of the State of Oklahoma.

3.     Upon information and belief, Defendant Invacare was at all times material herein a corporation organized and existing under the laws of a state other than Oklahoma and not licensed to do business in the State of Oklahoma.

4.     Upon information and belief, Defendant Invacare's corporate headquarters are located at 1 Invacare Way, Elyria, Ohio  44036, and it can be served through its registered service agent for process, CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, OH  43219.

5.     Upon information and belief, at all times material herein, Defendant Invacare controlled the design, manufacture, distribution, and sale of the ATO SOLARA2G,  SOLARA  TILT-IN-SPACE  Wheelchair,  serial  number  ("SN") 09BE004084 (hereafter "Wheelchair"), that was occupied or used by the Plaintiff Caylin Raines, Deceased, on April 6, 2017.

6.     Upon information and belief, Defendant Carter Healthcare, LLC, formerly known as Carter Healthcare, Inc. (hereafter "Carter" or "Defendant Carter"), was at all time material herein a corporation organized and existing under the laws of the state of Oklahoma, with its principal place of business located at 3105 S. Meridian Avenue, Oklahoma City, OK  73119,  and it can be served through its registered service agent for process, Stanley F. Carter, 3105 S. Meridian Avenue, Oklahoma City, OK  73119.

7.     Upon information and belief, Defendant Freedom Management Group L.L.C., operating under the trade name Advantage Mobility & Medical Equipment

(hereafter "Freedom", "Advantage" or "Defendant Advantage"), was at all times material herein a corporation organized and existing under the laws of the state of Oklahoma, with its principal place of business located at 1845 W. Reno Avenue, Oklahoma City, OK 73106, but its status has been cancelled; thus, it is no longer in good standing per the "Entity   Summary   Information"   Oklahoma   Secretary   of   State.   See https://www.sos.ok.gov/corp/corpInformation.aspx?id=3512044255.   Upon information and belief, it can still be served through its registered service agent for process, Amy Hoover, 3129 N. Timer Avenue, Bethany, OK 73008.

8.      Upon  information  and  belief,  Defendant  Invacare  shipped  the "Wheelchair" to Carter Healthcare, Inc. in March of 2009.  Subsequently, the Plaintiffs acquired the "Wheelchair" from Advantage Mobility & Medical Equipment in Oklahoma City, Oklahoma.  Thus, Defendants Invacare, Carter, and Advantage were engaged in interstate commerce and were doing business in the State of Oklahoma by holding themselves out to the public and citizens of, among others, the State of Oklahoma as designers, manufacturers, and/or sellers of wheelchairs at all material times herein.

9.      That on or about April 6, 2017, Plaintiffs were involved in a multi-vehicle accident caused by Defendant Harryman near Highway 76 and NE 70th, Blanchard, Oklahoma, resulting in the wrongful death of Caylin Raines and serious personal injuries to Marty Joe Raines.

10.      Upon information and belief and at all times material herein, Defendant Harryman was operating a 2015 GMC pickup [VIN# 1GD421C83FF128530] on April 6, 2017.

11.     Due to the acts or omissions on the part of the Defendants as alleged herein, Plaintiffs Marty Joe Raines and Shane Raines, as parents and next friends of Caylin Raines, Deceased, have been severely damaged.

12.     The matter sued on herein occurred in McClain County, State of Oklahoma.

13.     Pursuant to 12 O.S. §2004(F), this Court has proper subject matter jurisdiction and, pursuant to 12 O.S. §141, venue is proper in McClain County.

14.     The amount in controversy herein exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

## FIRST CAUSE OF ACTION

### NEGLIGENCE – AS TO DEFENDANT HARRYMAN

15.     Plaintiffs adopt and incorporate herein paragraphs 1 through 14 above, as if more fully stated out herein, and would further allege and state as follows:

16.     That on April 6, 2017, at or near State Highway 76 and Northeast 70th Street in the city limits of Blanchard, McClain County, Oklahoma, Plaintiff Marty Joe Raines was driving a 1995 Chevrolet conversion van also occupied by Caylin Raines and Delta McGrew when another vehicle (2015 GMC pickup) driven by Defendant Harryman failed to yield the right-of-way, causing a collision with a vehicle (2014 Nissan Altima driven by John Phillips) and causing it to strike Plaintiff Marty Joe Raines' vehicle (1995 Chevrolet conversion van) resulting in, among other things, the death of Caylin Raines and serious personal injuries to Marty Joe Raines.

17.     Plaintiff Caylin Raines was a retrained passenger in the vehicle driven by Plaintiff Marty Joe Raines and was occupying the "Wheelchair" which was properly strapped down or restrained at the time of the accident alleged in paragraph 16 above.

18.     Plaintiffs state that they in no way contributed to the collision or otherwise caused their injuries in any way and, thus, Marty Joe Raines and Caylin Raines are fault-free.

19.     That the collision and Plaintiffs' resulting injuries were caused and brought about by the negligence and wanton disregard of Defendant Harryman in any and/or all of the following particulars, to-wit:

(a)     That Defendant Harryman was guilty of negligence in that he carelessly, recklessly, and, with gross disregard of the rights of the Plaintiffs, drove his vehicle in such a manner as to cause the accident alleged in paragraph 16 above. Had Defendant Harryman exercised ordinary care by properly controlling the movement and direction of his vehicle, the collision would have been avoided;

(b)     That Defendant Harryman was negligent in that he failed to devote proper time and attention to his driving, and his non-attention thereby caused the accident alleged in paragraph 16 above;

(c)     That Defendant Harryman failed to obey traffic laws and road markings;

(d)     That Defendant Harryman drove in a careless and wanton manner without regard for the safety of persons or property, thus violating 47 O.S. §11-901 and making him negligent per se;

(e)     That Defendant Harryman failed to observe and obey the rules of the road;

(f)     That Defendant Harryman operated his vehicle in a manner not reasonable and proper; and

(g)     That Defendant Harryman failed to yield the right-of-way to Plaintiffs' vehicle, and Defendant is negligent per se.

20. That as the direct and proximate cause of the aforementioned negligence and reckless acts of Defendant Harryman, the Plaintiffs have suffered severe personal injuries, including the death of Caylin Raines, and have suffered actual damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

21. That based on the Defendant Harryman's intentional, willful, reckless, and/or gross disregard of Plaintiffs' rights, the Plaintiffs also seek punitive damages against Defendant Harryman in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## SECOND CAUSE OF ACTION

### CLAIMS FOR MANUFACTURERS' PRODUCTS LIABILITY, NEGLIGENT DESIGN AND MANUFACTURING, MANUFACTURERS' LIABLITY FOR FAILURE TO WARN, AND NEGLIGENT FAILURE TO WARN AS TO DEFENDANT INVACARE

22. Plaintiffs adopt and incorporate herein paragraphs 1 through 21 above and would further allege and state as follows:

23. Upon information and belief, Defendant Invacare was in the business of designing, manufacturing, constructing, testing, labeling, distributing, and selling the "Wheelchair" that was occupied or used by the Plaintiff, Caylin Raines, Deceased, on April 6, 2017.

24. Defendant Invacare controlled the design, engineering, manufacturing, construction, testing, labeling, distribution, and sale of the "Wheelchair" in its ordinary course of business.

25. The "Wheelchair" and/or component part(s) thereto was defectively designed, developed, engineered, fabricated, assembled, manufactured, tested, labeled,

advertised, marketed, promoted, sold, distributed, delivered, and/or supplied by Defendant Invacare.

26.     Upon information and belief, Defendant Invacare had received complaints of weld(s) in the frame of similar ATO SOLARA2G, SOLARA TILT-IN-SPACE Wheelchairs breaking, cracking, or otherwise separating prior to the accident alleged in paragraph 16 above.

27.     At all times relevant hereto, Defendant Invacare knew or, through the exercise of reasonable care, should have known that the "Wheelchair" and/or component part(s) thereof which it designed, developed, engineered, fabricated, assembled, manufactured, tested, labeled, advertised, marketed, promoted, sold, distributed, delivered, and/or supplied was not safe for its intended and/or reasonably foreseeable use because it was, among other things, structurally unsound and/or uncrashworthy due to weld(s) in the frame breaking, cracking, failing, or otherwise separating.

28.     That as a result of the automobile accident alleged in paragraph 16 above, the "Wheelchair" failed to properly function as intended or as reasonably expected due to, among other things, a weld in the frame breaking, failing, or separating which caused or contributed to Plaintiffs' injuries.

29.     The directions, instructions, and warnings related to the "Wheelchair" provided by the Defendant Invacare are inadequate and not of a nature that an ordinary user would expect, thus rendering the "Wheelchair" defective.

30.     At no time did the Plaintiffs misuse the "Wheelchair."

31.     At no time did the Plaintiffs knowingly or voluntarily assume the risk of any potential harm associated with the use of the "Wheelchair" for the purpose for which it was intended.

32.     The "Wheelchair," at the time it left the possession of Defendant Invacare, was inherently dangerous for its intended use and was not fit for its intended purpose, which presented and constituted an unreasonable danger or risk of harm and injury to a person who used, consumed, or might reasonably be expected to be affected by the "Wheelchair," including the Plaintiffs, as follows:

    (a)    The "Wheelchair" failed to adequately function;

    (b)    The "Wheelchair" was improperly tested, studied, researched, evaluated, designed, engineered, manufactured, assembled, constructed, inspected, labeled, distributed, marketed, or otherwise prepared for use and sold by Defendant Invacare prior to the "Wheelchair" being placed in the stream of commerce;

    (c)    The "Wheelchair" was defectively designed, engineered, manufactured, constructed, and/or assembled;

    (d)    The "Wheelchair" was not reasonably fit for its ordinary purpose as an ordinary consumer would expect; and

    (e)    The "Wheelchair" was structurally inadequate, insufficient, and/or unsound in that it failed to maintain its integrity because a weld in the frame broke during ordinary use by the consumer and said ordinary use was reasonably expected by Defendant Invacare.

33.     That Defendant Invacare approved and/or certified that the "Wheelchair" at issue was fit for its intended purpose when, in fact, the "Wheelchair" was defective or otherwise unreasonably dangerous.

34.     Upon information and belief, Defendant Invacare knew or should have known that the "Wheelchair" was unreasonably dangerous or otherwise defective based upon similar prior complaints of weld(s) in the frame and/or at joints of ATO

SOLARA2G, SOLARA TILT-IN-SPACE Wheelchairs breaking, cracking, or otherwise separating.

35.    That Defendant Invacare failed to adequately warn, advise, or otherwise notify the Plaintiffs of precautions required and/or risks associated with use of the "Wheelchair."

36.    That the defect(s) in the "Wheelchair" caused or contributed to the Plaintiffs' severe personal injuries.

37.    That Defendant Invacare was willfully and grossly in violation of its duties.

38.    That the Plaintiffs pray for actual and punitive damages for their manufacturers' product liability claims in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) against Defendant Invacare and for attorney fees, interest, costs, and such other relief as this Court deems just, proper, and right.

39.    That Defendant Invacare was negligent by breaching its duty to use ordinary care to ensure that the "Wheelchair" was reasonably safe for use; thus, Defendant Invacare and/or any and all of its employees negligently, carelessly, willfully, and/or intentionally failed to provide a reasonably safe "Wheelchair" for the Plaintiffs.

40.    That the "Wheelchair" was negligently and/or carelessly tested, studied, researched, evaluated, designed, engineered, manufactured, assembled, installed, constructed, inspected, labeled, distributed, marketed, or otherwise prepared for use and sale by Defendant Invacare.

41.    That Defendant Invacare and/or any and all of its employees negligently, carelessly, willfully, and/or intentionally failed to warn the Plaintiffs of the dangerous

condition then and there existing when Defendant Invacare knew or, in the exercise of ordinary care, should have known that said warning was necessary to prevent injury to the Plaintiffs. Specifically, this includes Defendant Invacare's failure to adequately warn, advise, or otherwise notify the Plaintiffs of precautions required and/or risks associated with use of the "Wheelchair," including, but not limited to, it was structurally unsound and/or not crashworthy due to weld(s) in the frame breaking, cracking, failing, or otherwise separating, thus subject to failing or breaking when the "Wheelchair" was involved in an automobile collision.

42. The negligence, carelessness, and recklessness of Defendant Invacare consisted of, among other things, the following acts and/or omissions:

(a) Failing to use reasonable care in the design, manufacture, labeling, advertising, marketing, promotion, sale, distribution, delivery, and supply of the "Wheelchair";

(b) Advertising, marketing, promoting, selling, labeling, distributing, delivering, supplying, servicing, maintaining, designing, manufacturing, and/or preparing the "Wheelchair" in a condition that lacked the necessary strength to withstand the amount of force and pressure to which the "Wheelchair" would reasonably be subjected to in the event of an automobile collision;

(c) The "Wheelchair" was constructed of improper or inappropriate materials given the conditions under which the "Wheelchair" was intended to be used;

(d) Advertising, marketing, promoting, selling, distributing, delivering, and/or supplying an unsafe "Wheelchair";

(e) Inadequately assessing the risk of injuries or harm occurring as a result of a malfunction of the "Wheelchair";

(f) Failing to adequately identify, investigate, correct, and/or mitigate the knowledge gained from prior complaints involving weld(s) in the frame and/or at joints of ATO SOLARA2G, SOLARA TILT-IN-SPACE Wheelchairs breaking, cracking or otherwise separating to lessen the risk of harm to users such as the Plaintiffs;

(g)     Failing to exercise reasonable care and take adequate precautions to warn Plaintiffs and others similarly situated against the reasonably foreseeable dangers created by the "Wheelchair" to which Plaintiffs and others similarly situated would be exposed, but which were not obvious dangers or risks that said ordinary users would expect from foreseeable use of the "Wheelchair";

(h)     Providing inadequate directions, instructions, and warnings which were ambiguous in nature and failed to warn of the reasonably foreseeable dangers created by the "Wheelchair" and the potential risk of serious bodily injury or death associated with said dangers;

(i)     Failing to adequately warn, advise, or otherwise notify the Plaintiffs of precautions required and/or risks associated with use of the "Wheelchair," including, but not limited to, that the "Wheelchair" was unreasonably dangerous or otherwise defective based upon substantially similar prior complaints of weld(s) in the frame and/or at joints in the frame breaking, cracking or otherwise separating;

(j)     Failing to warn that the "Wheelchair" was not safe for its intended use;

(k)     That Defendant Invacare was negligent in meeting/satisfying industry customs, standards, and/or requirements necessary for placing the "Wheelchair" in the stream of commerce; and

(l)     Such other acts of negligence, carelessness, and recklessness as will be determined through discovery.

43.     Defendant Invacare was negligent in failing to warn the Plaintiffs about certain hazards it knew about or should have known about including, but not limited to, dangerous, unsafe, and defective condition of the "Wheelchair"; thus, Defendant Invacare's negligent breach of its duty to warn (negligent failure to warn claim) is also a concurrent cause of, among other things, the death of Caylin Raines and serious personal injuries to Marty Joe Raines.

44.     That at the time of her injuries and resulting death, Plaintiff Caylin Raines was twenty (20) years of age.

45.    That as a result of the acts or omissions of the Defendants, the Plaintiffs suffered injuries on April 6, 2017, and the Plaintiffs in no way contributed to the cause of their injuries.

46.    As a result of the accident alleged in paragraph 16 above, the "Wheelchair" occupied by Caylin Raines broke or failed concurrently causing, among other things, the death of Caylin Raines and serious personal injuries to Marty Joe Raines.

47.    That as a proximate cause of the negligent acts or omissions of Defendant Invacare, the Plaintiffs have suffered and continue to suffer actual damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

48.    That based on Defendant Invacare's intentional, willful, reckless, and/or gross disregard of Plaintiffs' rights, Plaintiffs also seek punitive damages against Defendant Invacare in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## THIRD CAUSE OF ACTION

### CLAIM FOR NEGLIGENCE AND NEGLIGENT FAILURE TO WARN AS TO DEFENDANTS CARTER AND ADVANTAGE

49.    Plaintiffs adopt and incorporate herein paragraphs 1 through 48 above and would further allege and state as follows:

50.    Upon information and belief, Defendants Carter and Advantage distributed and/or sold the "Wheelchair" that was occupied or used by Plaintiff Caylin Raines, Deceased, on April 6, 2017.

51.     Defendants Carter and Advantage and/or any and all of their employees owed the Plaintiffs the duty to exercise ordinary care to avoid injuring them which included the duty to warn them.

52.     Upon information and belief, Defendants Carter and/or Advantage and/or any and all of their employees did not exercise reasonable care in the distribution and/or sale of the "Wheelchair" that was occupied or used by the Caylin Raines, Deceased, on April 6, 2017.  This includes negligently failing to assemble, inspection, and/or maintain the "Wheelchair" and negligently failing to pass on warnings or instructions for use from Defendant Invacare about the dangers and proper use of the "Wheelchair."

53.     The negligence, carelessness, and recklessness of Defendants Carter and/or Advantage and/or any and all of their employees also consisted of, among other things, the following acts and/or omissions:  Failing to use reasonable care to adequately identify, investigate, and record the knowledge gained from prior adverse events, complaints, or product failures involving said "Wheelchair"[1]; failing to adequately correct, mitigate, and/or prevent harm to persons and property caused by the unreasonably dangerous, hazardous, or otherwise defective condition of the "Wheelchair" or otherwise; and such other acts of negligence, carelessness, and recklessness as will be determined through discovery.

54.     Defendants Carter and/or Advantage and/or any and all of their employees were negligent in failing to warn the Plaintiffs about certain hazards they knew about or

---

[1] This includes failing to adequately warn, advise, or otherwise notify the Plaintiffs of precautions required and/or risks associated with use of the "Wheelchair," including, but not limited to, it was structurally unsound and/or not crashworthy due to weld(s) in the frame breaking, cracking, failing, or otherwise separating and, thus, subject to failing or breaking when the "Wheelchair" was involved in an automobile collision.

should have known about, including, but not limited to, dangerous, unsafe, and defective condition of the "Wheelchair"; thus, Defendants Carter's and/or Advantage's negligent breach of their duty to warn (negligent failure to warn claim) is also a concurrent cause of, among other things, the death of Caylin Raines and serious personal injuries to Marty Joe Raines.

55.     That as a concurrent proximate cause of the negligent acts or omissions of Defendants Carter and Advantage, the Plaintiffs have suffered and continue to suffer actual damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

56.     That based on Defendants Carter's and Advantage's intentional, willful, reckless, and/or gross disregard of Plaintiffs' rights, Plaintiffs also seek punitive damages against Defendants Carter and Advantage in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

**FOURTH CAUSE OF ACTION**

**WRONGFUL DEATH**

57.     Plaintiffs Marty Joe Raines and Shane Raines, as parents and next friends of Caylin Raines, Deceased, bring their Fourth Cause of Action pursuant to 12 O.S. §§1053, *et seq.* and re-allege and incorporate by reference the above paragraphs 1 through 56 above.

58.     Plaintiffs Marty Joe Raines and Shane Raines are the surviving parents of the deceased, Caylin Raines, who died in the manner alleged above on April 6, 2017.

59.     By reason of the death of Caylin Raines, the decedent is survived by, among others, her parents, Marty Joe Raines and Shane Raines, who have suffered grief and have been deprived of the decedent's companionship, support (both love and

affection), destruction of the parental relationship, loss of consortium, and any other right of recovery pursuant to 12 O.S. §§1053, *et seq.,* all contributing to damage in the sum of an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

60.     By further reason of the careless, reckless, negligent acts, wrongful acts or omissions, and want of care of each Defendant, Plaintiffs Marty Joe Raines and Shane Raines incurred medical expenses and funeral expenses as a result of the acts or omissions of each Defendant as set forth herein.

61.     As a proximate result of the above-described wrongful acts of each Defendant, the decedent, Caylin Raines, suffered severe multiple injuries, along with severe mental pain and anguish which caused her death, loss of parental/child association, medical and funeral expenses, and, therefore, has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

62.     That based on each Defendant's willful, reckless, and gross disregard of the rights of Caylin Raines, Plaintiffs Marty Joe Raines and Shane Raines seek punitive damages against each Defendant in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## FIFTH CAUSE OF ACTION

### (NEGLIGENCE – DIRECT VICTIM CLAIM)

63.     Plaintiffs adopt and incorporate herein paragraphs 1 through 62 above, as if more fully stated herein, and would further allege and state as follows:

64.     Plaintiff Marty Joe Raines was directly physically involved in and witnessed the serious injuries to her daughter, Caylin Raines.

65.     As a result of being directly physically involved in and viewing the severe personal injuries and resulting in the death of Plaintiff Caylin Raines, Plaintiff Marty Joe Raines suffered additional serious injury.

66.     A close familial relationship existed between the Plaintiffs, Marty Joe Raines and Caylin Raines.

67.     That based on each Defendant's wrongful acts or omission as well as their intentional, willful, reckless, and/or gross disregard of Plaintiff Marty Joe Raines's rights, she seeks actual and punitive damages against each Defendant in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## SIXTH CAUSE OF ACTION

### BREACH OF WARRANTIES

68.     Plaintiffs adopt and incorporate herein paragraphs 1 through 67 above, as if more fully stated herein, and would further allege and state as follows:

69.     In designing, developing, engineering, fabricating, assembling, manufacturing, testing, maintaining, advertising, marketing, promoting, selling, distributing, delivering, supplying, and/or otherwise introducing the "Wheelchair" into the stream of commerce, Defendants expressly and/or impliedly warranted that the "Wheelchair" was merchantable, fit, and safe for the ordinary and particular purposes for which it was supplied and that it was free from defects.

70.     Defendants expressly warranted that the "Wheelchair" was safe for its intended use.

71.    Defendants breached their express and implied warranties in that the "Wheelchair" was not merchantable, was not fit and safe for the ordinary and particular purposes for which it was supplied, and was defective.

72.    As a direct and proximate result of the Defendants' breach of express and implied warranties, Plaintiffs were seriously injured, including the death of Plaintiff Caylin Raines on April 6, 2017.

73.    Defendants have been provided timely notice of the defect and promptly notified of Plaintiffs' injuries.

WHEREFORE, premises considered, Plaintiffs pray for judgment in their favor against each Defendant for (a) actual damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00); (b) punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00); (c) Plaintiffs' prejudgment interest, costs, and a reasonable attorney fee; and (d) such other relief to which Plaintiffs may be entitled.

Respectfully submitted,

JOE E. WHITE, JR.          OBA #12930
CHARLES C. WEDDLE III   OBA #18869
WHITE & WEDDLE, P.C.
630 N.E. 63rd Street
Oklahoma City, Oklahoma  73105
(405) 858-8899
(405) 858-8844 FAX
joe@whiteandweddle.com
charles@whiteandweddle.com

and

JEREMY Z. CARTER          OBA#19772
THE CARTER LAW FIRM
P.O. Box 255
133 N.W. 32nd Street
Newcastle, Oklahoma  73065
(405) 392-3300
(405) 392-2417 FAX
Jeremy@jzcarterlaw.com

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

*Attorneys for Plaintiffs,*
*Marty Joe Raines and Shane Raines, as*
*parents and next friends of Caylin Raines,*
*Deceased and Marty Joe Raines,*
*Individually*

| Fill in this information to identify the case: |
| --- |

| Debtor 1 | Invacare Corporation |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Northern District of Texas |
| Case number | 23-90068 |

**RECEIVED**

JAN 08 2024

LEGAL SERVICES

Filed: USBC - Southern District of Texas
Invacare Corporation, et al.         (CLM)
23-90068 (CML)

INR

0000000304

0000000304         04/22

## Official Form 410
# Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Marty J. Raines and Shane Raines
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Crowe & Dunlevy, PC, Attn: Crissie Stephenson
Name

2525 McKinnon St., Suite 425
Number        Street

Dallas                    TX          75201
City                       State       ZIP Code

Contact phone 214-420-2140

Contact email crissie.stephenson@crowedunlevy.cc

Where should payments to the creditor be sent? (if different)

White & Weddle, PC
Name

630 NE 63rd Street
Number        Street

Oklahoma City          OK          73105
City                      State       ZIP Code

Contact phone 405-858-8899

Contact email charles@whiteweddle.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one): ___ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) 0000010282       Filed on 03/15/2023
                                                                                     MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____ at least 75,000.00 . Does this amount include interest or other charges?
(amount not liquidated)

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Strict Product Liability & Negligence

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

### Part 3: Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  01 / 08 / 2023<br>        MM / DD / YYYY |
|---|---|

/s/ Charles C. Weddle
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Charles C. Weddle |
|---|---|
| | First name            Middle name            Last name |
| Title | |
| Company | White & Weddle, PC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 630 NE 63rd Street |
| | Number        Street |
| | Oklahoma City        OK        73105 |
| | City        State        ZIP Code |
| Contact phone | 405-858-8899        Email charles@whiteandweddle.com |

This claim contained additional attachments which were removed due to sensitive information.

To obtain a complete copy of this claim, please call Epiq Corporate Restructuring LLC at 646.282.2500.

Thank you.